CARLO RUSSO *vs.* HENRY SELEIT ET AL.

First Judicial District, Hartford, October Term, 1922.

WHEELER, C. J., BEACH, BURPEE, KEELER and HINMAN, Js.

The location of highways by dedication and acceptance is determined by the conduct, including the acts and declarations, of the alleged dedicating owners and of the general unorganized public.

In the absence of a specific dedication of any accurately defined strip of land, the exact lines or limits of the highway must be determined by public acceptance and user and by the character and extent of that use.

The question of implied acceptance, in so far as its nature, source and the acts and things which may be indicative of it are concerned, is one of law; the existence of these legal requirements in a given case is a question of fact.

An allegation of the ownership of land "bounded by a highway," and its admission in the answer, admits a highway boundary, but not its location.

The subordinate facts bearing upon the ultimate conclusion of the trial court in the present case—the existence of a highway by dedication and acceptance, and evidenced by user, over the locus in question—examined and reviewed, and *held* not to possess the probative force nor to be of the character or quality required by law in order to warrant the judgment rendered for the defendants upon that issue; that the locus of the trespass committed by the defendants was not upon any public highway, but on land the fee of which was in the plaintiff.

The defendants, in connection with their claim of highway, alleged and claimed a private right of way across the locus, but this the trial court did not in terms pass upon. *Held* that for the foregoing reasons there must be a new trial, but that it should be confined solely to the alleged existence of the defendants' private right of way.

Argued October 3d, 1922—decided January 26th, 1923.

SUIT to restrain the defendants from continuing to trespass upon land alleged to be owned in fee by the plaintiff, and for damages, brought to and tried by the Court of Common Pleas in Litchfield County, *Woodruff, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *Error, and limited new trial ordered.*

The diagram on page 400, compiled from the exhibits in the case, is a substantially accurate representation of the property in controversy and such of its surroundings as are material to the points involved in the appeal.

The defendants owned the premises north of the line A, B, D. The plaintiff owned the premises east of the line C, B, and north of Hill Street to defendants' south line. The defendants had maintained a gate in the line A, B, for some time, and had claimed the right, proceeding through this gate, to cross the land A, B, C, to Willow Street. The plaintiff, in October, 1917, built a fence along the line A, B, closing this gate, and defendants, in February, 1918, tore this fence down. Thereafter plaintiff brought this action to recover damages for the acts of alleged trespass upon the land A, B, C, and for an injunction to prevent defendants crossing this land, which plaintiff had repeatedly forbidden them to do. The defendants' answer to this action is that the land A, B, C, is a part of the public highway; and further, in their answer and on the trial, defendants claimed that they had a prescriptive right to cross the same. The only ques-

tion raised by the pleadings was as to whether the space A, B, C, was a public highway, and this is determined by the location of the west boundary of plaintiff's

land, whether marked by the line B, C, or by the irregular line A-C.

On March 1st, 1868, the Redfield and Rice Manufacturing Company owned a tract of land which included the property later owned by the plaintiff and

Russo *v.* Seleit.

by the defendants. Along the south line of the property later owned by the defendants was a fence, and in it the gate above referred to. The building known as the "Beehive," and later occupied by the plaintiff for a store and tenements, was at this time occupied as a tenement block. By a series of conveyances, the title to the property now owned by the plaintiff was vested in him in fee simple in 1915, and he had occupied it as a tenant since 1907 or 1908, and the westerly boundary of this property was given as the highway. By subsequent conveyances the property now owned by the defendants became vested in them, and the southerly boundary given was "by land of Edward Capel in part and in part by public highway."

Some time in the sixties, a raceway which extended across and on both sides of Franklin Street was covered, and since that time Willow Street has remained an open passway. Harwinton Avenue was dedicated and accepted by the public some time after 1867, as of a width of forty feet, and this layout followed substantially the line of a prior layout of this avenue by the town of Torrington which was not accepted by the town and was about forty feet easterly of the line of the layout. The highway in front of the plaintiff's property as dedicated and accepted and used, and later established and worked by the Borough of Torrington, was forty feet in width. Hill Street, the southerly boundary of the plaintiff's property, is a passway or street which has existed as such for about forty years. In 1902 and afterward, the land A, B, C, was frequently used by the children of the tenants of the tenement block and of the neighborhood, as a playground, and this land A, B, C, for a long time after 1902, was wholly unimproved, and people in going to the store in the "Beehive" crossed this land in all directions as they saw fit without let or hindrance,

Russo *v.* Seleit.

and teams going to the tenements for the purpose of delivering goods or for other purposes, when dealing with the said tenants, drove across the land A, B, C, to the tenements at will. The foregoing facts are uncontradicted. Other facts are stated in the opinion.

The court found the following paragraphs of the finding incorrectly, as the opinion holds, and these are stated at length in the footnote.

9. The west boundary of the plaintiff's land was marked by a north and south board fence standing about fifteen feet west and in front of said "Beehive," with the entrance thereto through said fence from the west.

14. Said highway as so surveyed and reported was not constructed, but a highway by dedication was constructed by the town authorities and accepted and used by the public as a public highway along a route running easterly from said Seymour store, mostly southerly from the east and west portion of said survey line and along the southerly line of said east and west fence bounding the defendants' line on the south and turning an angle southerly along the said north and south board fence fifteen feet westerly from the plaintiff's said building or "Beehive," and bounding plaintiff's said land on the west, and thence continuing south to the Harwinton town line. (Exhibits G, 5 and 9.)

15. Said highway from said Seymour store easterly to the angle in said highway at the junction of defendants' south fence with the plaintiff's west fence is known as Franklin Street and from that point southerly is known as Harwinton Avenue, or sometimes "Harwinton Road."

16. Said highway from the junction of defendants' south fence with the plaintiff's said west fence was constructed easterly from the north and south portion of said survey line and across the southerly portion of said land conveyed to Redfield & Rice by the Coe Brass Mfg. Co. (See Exhibits 7 and 9.)

17. Since the construction of said highway, the same has been used by the public up to the present time as a public highway and up to the plaintiff's said west fence and the defendants' said south fence.

24. By deed dated January 19, 1884, (Exhibit 2) said George W. Church conveyed the lot now owned by defendants with "a small tenement house" (referred to in Exhibit 7, deed from the Coe Brass Mfg. Co. to Redfield & Rice) to John Tofield, bounded easterly on said Cemetery; Southerly on said Edward Capel, in part, and in part on said dedicated and constructed highway, Franklin Street or Harwinton Avenue; and Westerly by said passway or Willow Street to the Cemetery entrance.

26. At a point in defendants' said south fence there is a small gate

The court improperly refused to find paragraphs 54 and 56 of the draft-finding, as the opinion holds, and these are also printed as a footnote.

The trial court reached the following conclusions: 1. That the action was one concerning trespass to land, and that where the title was in dispute and doubtful, courts would refuse to interfere by injunction. 2. That the west boundary line of the plaintiff's land was about fifteen feet west and in front of, the so-called "Beehive." 3. That westerly from the boundary line the land claimed by the plaintiff was and is a public highway. 4. Judgment for the defendants, the plaintiff having failed to establish by a fair preponderance of evidence his ownership in the land which he seeks to enjoin the defendants from entering upon or

about thirty two feet easterly of the corner where Willow Street meets Franklin Street, which opens onto said dedicated and accepted public highway and from which, inside of said fence, a walk leads to the south entrance of defendants' house.

27. This gate has been used ever since the construction of defendants' said south fence prior to March 12, 1868, (See Exhibit 7) for ingress and egress to and from defendants' house to said highway, Franklin Street or Harwinton Avenue, without any objection or question, and as a matter of right, and continuously, by the occupants of the house now owned by defendants and by any who had occasion to call or go to said house from the south.

31. The section of said highway, Franklin Street or Harwinton Avenue, south of defendants' south fence and west of plaintiff's said north and south fence west of the "Beehive," was commonly used by the children from that neighborhood as a playground.

39. No claim of title or acts of ownership were ever before asserted by the plaintiff over said area, nor by any of his precedessors in title.

54. The highway known as Harwinton Avenue, as used and occupied by the public and as dedicated by the plaintiff and his predecessors in ownership of the plaintiff's property, never extended East of the curb line as established by the borough engineer and said committee.

56. Neither the Town of Torrington nor the Borough of Torrington, nor its officials, nor the public, have ever disturbed the plaintiff or his predecessors in title in the use, occupation and possession of the house lot of the plaintiff's property, as bounded by the curb line on the west and the house on the east.

crossing, to the extent of preventing the defendants or the public the right to enter or cross said land, said land being part of a public highway.

*Frank B. Munn*, for the appellant (plaintiff).

*Thomas J. Wall* and *Walter Holcomb*, for the appellees . (defendants).

KEELER, J. Many reasons of appeal are assigned by plaintiff claiming the subordinate facts found by the court do not justify its conclusions of law, that certain parts of the finding should be corrected, and that certain additional facts should be found as to which the evidence was uncontradicted.

In resolving the question as to the location of the highway or highways in dispute, there seems to be little controversy as to the law applicable to the situation. The highways adjoining the properties of Seleit and Russo are highways by dedication and acceptance, and their location is determined by the conduct, including acts and declarations, of the alleged dedicating owners and of the general unorganized public.

Undoubtedly there existed to the west of plaintiff's land a highway by dedication, but as there is nothing in the record which shows a specific dedication of any accurately defined strip of land as a highway by the plaintiff or his predecessors in title, the exact lines of the highway must in this case be determined by public acceptance and üser, and limited by the extent and character of the use. *Hall* v. *Meriden*, 48 Conn. 416, 429. "This question [of acceptance] is one of mixed law and fact. It is one of law in so far as it involves questions as to the nature of this acceptance, the source from which it must come, and the acts and

things which may be indicative of it. It is one of fact in so far as it involves inquiries as to whether or not the requisite acts and things have been done so that legal requirements have been met." *Phillips* v. *Stamford*, 81 Conn. 408, 411, 71 Atl. 361. See also: *Guthrie* v. *New Haven*, 31 Conn. 308, 321; *New York, N. H. & H. R. Co.* v. *New Haven*, 46 Conn. 257, 262.

Before passing to a consideration of the details of the finding in the case before us, certain claims of each party to the appeal regarding the effect of the pleadings and of the finding of the court founded upon the first paragraph of the complaint, claim consideration. The plaintiff (appellant) claims that by the admission in the answer of this paragraph, to the effect that he owned and possessed the piece of land therein described, with the western boundary stated as "a public highway known as Franklin Street or Harwinton Road," the title to the plaintiff's property was no longer in question, but was an admitted fact. But the admission of the answer goes no further than the allegations to which it responds, one of which is the boundary by a public highway; the question still remains as to the location of this highway. On the other hand, the defendants insist that since the court finds (paragraph 4 of finding), in response to the allegations of this paragraph of the complaint, that the plaintiff had not established his ownership of the property described therein "to the extent of preventing the defendants or the public the right to enter upon or cross said land, as the land over which the plaintiff seeks to gain exclusive control is public highway," and the plaintiff, in his reasons of appeal and in his motion to correct, challenges only the latter clause of this paragraph of the finding, to the effect that the land over which the plaintiff sought control was a public highway,—therefore the earlier part of the finding, negating the owner-

ship of plaintiff in the land described in the complaint, stands unchallenged on appeal. Herein the defendants overlook the consideration that the only real finding of fact in paragraph four is the existence of the public highway; that the earlier part of the paragraph merely fails to find ownership of the property going to the extent of preventing use thereof by defendants in entering and crossing the same. In other words, the whole legal effect of the finding is a rather naïve and unusual statement that such ownership in the property as plaintiff might have, was subject to the easement of a public highway.

It is entirely plain that the issue developed by the pleadings upon which the court decided the case, was as to the location of a highway, and equally manifest that the reasons of appeal are adequate to question the correctness of the ruling of the court.

The trial court finds, in effect, that the predecessors of the plaintiff dedicated as a highway all of the land lying south of Seleit's south fence and west of a line fifteen feet westerly of the front of the building known as the "Beehive," and that the public has accepted the same by user. That is to say, that the irregular plot of land included within lines from the points lettered A, B, and C on the diagram were so dedicated and accepted as well as land west of the irregular curved line A-C, as to which there is no dispute concerning its being part of the highway.

There are two ultimate conclusions made by the court upon which the court as matter of law founds its decision: first, that the western boundary of plaintiff's land is a line fifteen feet west of the front of the "Beehive "; and second, that all land westerly of said line is public highway. The plaintiff contends that neither of these conclusions is borne out by the subordinate facts, and assigns error in numerous particulars.

We will first examine such subordinate facts as appear in the finding bearing upon the fact and extent of dedication. It is a conceded fact in the case that the dedicated and accepted width of Franklin Street and of Harwinton Avenue along the general course of said highways was forty feet. The dedicated land in front of plaintiff's property, if the court's conclusion is correct, forms a sort of plaza of considerably greater extent than forty feet wide. Dedication of such a quantity of land might have been in fact made, but is unexplained by any reason therefor arising out of the facts in the case. Such a condition not satisfactorily explained, while in no way conclusive, does not fortify the result arrived at by the court. The court finds user by the public of this land up to the defendants' south fence and the plaintiff's west line (formerly indicated by a fence) since the construction of the highway. It is further found by the court that there was a gate opening out of the south line of Seleit's property, which gate had existed prior to March 12th, 1868, and had been used ever since without objection and as a matter of right by the owners of this property and those who had occasion to go to and from the house situated thereon. And it is further found that purveyors of fuel were accustomed for many years to drive their teams through a removable section of this fence east of said small gate, under a claim of right. This fact does not establish the finding that the land immediately south of the fence was public highway, and the court specifically found as matter of law that the situation did not have that effect. During the summer season as far back as 1902, children frequently used the land to the west of the "Beehive" property as a playground. This fact does not tend to prove user as a highway by the general public. If the use of land by children in play could, if long continued, establish a highway in

and over any given locality, the public would find open to it facilities for travel hitherto unsuspected. In 1902, and long prior thereto and for some time afterward, the lot in front of the "Beehive" was unimproved and persons going to the store or tenements crossed the front of the lot in all directions, as did, also, teams delivering goods to the tenements, and persons drove where they chose across said lot. This fact does not establish user of a highway. Admittedly somewhere west of this building there was a highway, and also the highway was at least fifteen feet from the front of the house. That in getting from the highway to the house persons drove about where they pleased, does not tend to show user as a highway of the part of the open space west of the west boundary of the property as claimed by defendants, any more than it shows such user easterly of the boundary line on property admittedly belonging to the plaintiff or his predecessors, and constituting the front yard of the tenement house.

The character of the "Beehive" as a low grade tenement property would indicate that neither the owners or occupants of the same would be careful of the direction of traffic in this respect, and any user predicated upon facts like the above can have little effect as showing either dedication on one hand or acceptance on the other hand. Persons having occasion to visit the house went about where they pleased, and the owners or occupants evidently had no knowledge or care in the matter.

Before the time of the alleged trespass south of defendant Seleit's south line and west of plaintiff's west line as found by the court, the ground was rather low, and, in times of rain, water temporarily settled there in a shallow pool, and filling was done in this depression by plaintiff's predecessors in title. This fact has no tendency to prove that the land filled in was

part of a public highway; its probative effect would rather be that the various prior owners of plaintiff's property were improving their front yard rather than the highway. By reference to the detailed finding as to the establishment of the curb line as found by the court, it will be noted that it there appears that the borough engineer of the borough of Torrington located the curb "where he estimated a curb line would be likely to be laid out" in the future if a legal change was made in the alignment and location of the street. This curb line is substantially as indicated by the curved line A-C of the diagram, and whatever force this fact may have, it clearly does not indicate that the west line of the existing traveled way was a considerable distance to the east. This curb was established in or about September, 1917, and thereupon plaintiff proceeded to grade the land inside of said curb line constituting the plot A, B, C on the diagram. If the traveled way ran along the course found by the court to exist, this conduct would have been a serious obstruction of the highway, yet it does not appear that any action was taken by the borough or town of Torrington, or by any one of the general public, to abate the nuisance, and no controversy arose concerning the highway until the plaintiff built his short length of fence in front of Seleit's gate for the evident purpose of having the same torn down, and his desires in that regard were soon fulfilled. There is nothing in this transaction to establish a dedication long previous as a highway, and an acceptance of the same by user in the location found by the court. The probative force of such a recent transaction may be small, but such weight as it may have favors the plaintiff's contention, and does not support the ultimate facts found by the court.

We fail to find, from the subordinate facts above

Russo *v.* Seleit.

recited, such acts of user as would support dedication of land for a highway along and up to Seleit's south fence and up to and along a line fifteen feet westerly of the front wall of the "Beehive "; especially when these facts are considered with reference to the question of convenience and necessity, as to which there is no express finding in the facts found by the trial court, and, so far as the evidence certified is concerned, there does not exist in the testimony anything upon which such a finding might be predicated. The three maps in the case as exhibits are all certified as part of the finding, and the contents thereof constitute facts to be considered, together with the other facts appearing in the finding and as explanatory thereof. There is no material discrepancy in the lines or distances appearing on these maps, nor in the location of the topographical features appearing in the case. These maps show the easterly line of a highway, noted as A-C on the diagram in the statement of facts, which highway was the one existing and used by the public at the time this action was begun. There is nothing in the facts found, nor in the facts revealed by the exhibits, to show any consideration of convenience or necessity attaching to any other route than the one then in use. The road was at least forty feet in width as regards Harwinton Avenue, and much wider above the junction with Franklin Street.

We see nothing, therefore, in the subordinate facts as above detailed, considered with reference to dedication as evidenced by user and convenience and necessity, to sustain the location of the highway as found by the trial court.

If, however, the finding of the court in paragraph 17, of user by the public of land up to Seleit's south line and the west line of plaintiff where the latter is found to be as indicated by the once-existing fence,

can be treated as finding a fact subordinate to the ultimate conclusion of the location of the dedicated and accepted highway, then we are satisfied that not only is the user detailed above not of the character from which dedication may properly be inferred, but that the plaintiff is entitled to certain corrections of the finding favorable to his contentions in this respect.

Paragraph 7 of the finding, devoted to the subject of the removal of the tenement building, contains a statement that said building "was moved and constructed on the westerly part of plaintiff's land "; while uncontradicted evidence in the case shows that the same was moved to the extreme easterly part of the land, and so far moved that its then owner, the Redfield & Rice Manufacturing Company, had to purchase land from the Coe Brass Manufacturing Company in order to place the building where it now stands. By the deed from the latter corporation and from the maps (Exhibits G, 7 and 9) it appears that the west line of the tract last mentioned runs through the building from north to south. The part of the paragraph just quoted should be stricken out as requested by plaintiff.

Paragraph 9 of the finding should be stricken out. It is found without evidence. It appears that a fence once existed upon the land while the Redfield & Rice Manufacturing Company owned land extending westerly thereof to a considerable distance, a part of which was sold to one of the plaintiff's predecessors in title. There was no evidence that this fence had been in existence for twenty-five years before the trial of the action, and no evidence that it had ever been recognized or claimed as a boundary.

The considerations above stated constrain us to strike out the sentences and phrases attacked by plaintiff's motion in paragraph, 14, 15 and 16, the whole of

paragraph 17, and the phrases objected to in paragraphs 24, 26, 27 and 31 of the finding.

Paragraph 39 of the finding should be stricken out. There is uncontradicted evidence that Scoville and others, prior to the purchase of the land by the plaintiff, did certain filling in and upon a low spot within the bounds of the space A, B, C, on the diagram and upon parts of said space incorrectly found by the trial court to be part of the traveled public highway, and also that the plaintiff has filled and graded the land within said space, and there is no evidence that any municipality, the general public, or any person other than the defendants have ever objected to these acts or in any way interfered with them. In accordance with the uncontradicted evidence in the case, paragraph 56 of plaintiff's draft-finding, as set forth in the statement of facts, should be found proven and the same substituted for paragraph 39 in accordance with plaintiff's motion.

We also think that paragraph 54 of plaintiff's draft-finding, which appears in the statement of facts, should have been found by the court, and that the refusal so to do was error.

The facts set forth in said paragraph 54 are established by the testimony of a number of witnesses, and there appears in the record no testimony contradicting or modifying the testimony of these witnesses, except to the effect that free use was made of all the land to the west of the "Beehive" by persons visiting its tenants for business purposes, which latter use we have before said does not indicate user establishing dedication and acceptance as a highway.

For the reasons above given, we hold that the dedicated and accepted highway adjoining the property of plaintiff described in the complaint was not in the location found by the trial court, and that it erred in

so finding. The locus of the trespass committed by defendants was not upon any public highway, and as before noted, the title to the land within the space indicated by the letters A, B, C was in the plaintiff in fee simple.

In the third paragraph of the second defense in the answer, there is an evident attempt to set up a right of way by user over the land on which the trespass occurred, combined with but distinct from the claim that the same was part of the highway. This defense was considered by the court but was not in terms passed on, for the reason that the decision in the action was placed solely on the location and existence of a highway, at the point in question, so that so far as the record discloses, the claims of the defendants in that regard were not definitively passed upon. We therefore do not deem it just that there should be an absolute reversal of judgment on this appeal, but that defendants should have the opportunity if they so desire, to litigate the question of a private right of way from the south gate of Seleit's fence over land of plaintiff to the highway southerly thereof, and, if thought necessary, upon a properly amended answer.

There is error and a new trial is ordered, solely on the question of the existence of a private right of way.

In this opinion the other judges concurred.