ANTHONY AUGLIERA, INC., ET AL. *v.* EUGENE S. LOUGHLIN ET AL., PUBLIC UTILITIES COMMISSION, ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued February 13—decided May 8, 1962

*Sidney L. Goldstein,* with whom, on the brief, was *Paul J. Goldstein,* for the appellants (named plaintiff et al.).

*Reubin Kaminsky,* for the appellant (plaintiff Nygard Express Company, Inc.).

*Louis Weinstein,* assistant attorney general, with whom were *Samuel Kanell,* assistant attorney general, and, on the brief, *Albert L. Coles,* attorney general, for the appellees (defendants).

BALDWIN, C. J. The plaintiffs, Anthony Augliera, Inc., Roy Hurlburt, and the Nygard Express Company, are motor contract carriers operating under certificates issued by the public utilities commission. See General Statutes §§ 16-281(d), 16-292. The plaintiffs have appealed from a judgment of the Superior Court which dismissed their appeal from an order of the commission of June 9, 1960, raising their rates on the carriage of iron and steel articles to the level of the rates for those articles applicable to motor common carriers under a rate stabilization order of the commission, Docket No. 9652, dated April 15, 1959. The plaintiffs claim that the order of June 9, 1960, is illegal, arbitrary and unreasonable and that it will destroy their transportation business with shippers for whom they have contracted to carry iron and steel.

General Statutes § 16-296 provides, inter alia, that the commission may, on its own motion after a hearing, prescribe minimum rates and charges covering the operation of motor contract carriers in intrastate competition with motor common carriers; that such minimum rates and charges "shall give no advantage or preference to any such contract carrier in competition with any common carrier by motor vehicle . . . which the commission finds to be undue or inconsistent with the public interest"; and that each contract carrier shall file

with the commission the minimum rates charged.

On March 9, 1960, the commission, acting pursuant to § 16-296, notified the plaintiffs, together with three other authorized contract carriers, of a public hearing to be held for the purpose of prescribing minimum rates and charges covering the intrastate operation of motor contract carriers of iron and steel articles. As a result of the hearing, the commission concluded: The contract carrier rates were lower than the common carrier rates for the same articles and gave to contract carriers in competition with common carriers an advantage or preference which was undue and inconsistent with the public interest. The commission, on June 9, 1960, issued the order appealed from. It fixed the minimum rates for motor contract carriers of iron and steel articles at the same level as the minimum common carrier rates for such articles and canceled all existing contract carrier rates which were lower.

The plaintiffs' appeal from the commission's order raises the basic issue whether there was competition which justified interference by the commission with the contract carrier rates on file with it. See General Statutes §§ 16-296, 16-294. The appeal was taken pursuant to General Statutes § 16-307, which incorporates the principles and procedures outlined in §§ 16-35 to 16-39 for appeals from an order, authorization or decision of the commission. Under § 16-37, the court reviews, on a certified record, the proceedings of the commission, examines the legality of the order, authorization or decision appealed from and its propriety and expediency so far as the court has cognizance of the subject, and proceeds in the same manner as on complaints for equitable relief. The court cannot substitute its discretion for that legally vested in the commis-

sion but determines on the record whether there is a logical and rational basis for the decision of the commission or whether, in the light of the evidence, it has acted illegally or in abuse of its discretion. A plaintiff has the burden of proof as to the existence of any abuse. General Statutes § 16-37; *Briggs* v. *Public Utilities Commission,* 148 Conn. 678, 687, 174 A.2d 529; *Interstate Commerce Commission* v. *Jersey City,* 322 U.S. 503, 512, 64 S. Ct. 1129, 88 L. Ed. 1420; *Rochester Telephone Corporation* v. *United States,* 307 U.S. 125, 145, 59 S. Ct. 754, 83 L. Ed. 1147; 42 Am. Jur. 644, § 217. In *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.,* 145 Conn. 243, 252, 140 A.2d 874, we discussed § 16-37 (then Rev. 1949, § 5427) and pointed out that a finding by the commission should state with clarity and completeness the facts and conclusions essential to its decision, so that the trial court and this court could determine from the record of the commission whether the facts furnished justifiable reason for its action. See also *Briggs* v. *Public Utilities Commission,* supra.

The proceeding at bar stems from an earlier proceeding in which the plaintiffs were not parties. In it, several common carriers applied for exemptions from the iron and steel rates prescribed in the commission's rate stabilization order of April 15, 1959, so that, as they claimed, they could remain competitive with contract carriers of the same commodities. See P.U.C. Docket No. 9652-18, p. 5 (Mar. 9, 1960). One requested exemption was granted. See General Statutes § 16-287 (a). The others were denied either on the ground that the service as offered was not sufficiently specialized to warrant an exemption or that the lower rates proposed were not reasonably compensatory to the carrier. Never-

theless, the commission stated in its finding: "Obviously, the availability of alternate service by contract carriage at lower rates can prove destructive to common carriage of these commodities. Such a development could defeat the main purpose of the rate stabilization order, i.e., the prescription of just, reasonable and compensatory rates, in order to foster the existence of a healthy common carrier industry." P.U.C. Docket No. 9652-18, p. 5 (Mar. 9, 1960). Accordingly, the commission, acting pursuant to General Statutes § 16-296, determined in that proceeding to summon, on its own motion, contract carriers to show cause why their rates should not be fixed on a basis comparable to those prescribed for common carriers. Ibid. The present proceeding, in which the plaintiffs, with three other contract carriers, were summoned, is the result of that determination.

General Statutes § 16-281 specifically recognizes three classes of motor carriers: "motor common carriers," "motor contract carriers," and "motor private carriers." The statutory distinction between the first two, pertinent to the present case, is that the motor common carrier transports property for hire for the general public, while the motor contract carrier transports property under special and individual contracts with its shippers. § 16-281 (c), (d). Each motor contract carrier, however, is limited by statute to not more than four such contracts. § 16-297. Manifestly, the statutes recognize that the operations of these two classes of carriers are essentially different, but they also contemplate that the two classes may become engaged in competition harmful to the common carriers and that there is a consequent need for regulation. To justify a fixing of identical rates for each class,

however, it must appear that they are actually in competition and that that competition is such as to reduce the income of the common carriers so that they are unable to maintain adequate and efficient carrier service for the public at large. *Briggs* v. *Public Utilities Commission,* 148 Conn. 678, 684, 174 A.2d 529.

The evidence in the instant case falls far short of showing any actual competition between the plaintiffs and common carriers in the same area. It is possible for one to offer a service at less cost than another and, by so doing, take business away from the other. There is, however, an almost infinite variety of factors involved in the transportation business. The commission, taking into consideration all of the factors pertinent to a particular case, must have before it sufficient proof to enable it reasonably to conclude that there is competition, not as a mere possibility, but as a probability, and that that competition is undue and inconsistent with the public interest. General Statutes § 16-296; see *Lugdon* v. *Meriden,* 145 Conn. 360, 363, 143 A.2d 157; *Hennessey* v. *Hennessey,* 145 Conn. 211, 214, 140 A.2d 473. There was evidence at the hearing in the case at bar that at least two of the plaintiffs' shippers, Fox Steel Company and Eastern Steel and Metal Company, had been using contract carriage in preference to common carriage for many years. The commission's own finding states that the shippers emphasized that their operations required contract carriage, and they all acknowledged that they seldom, if ever, used the services of a common carrier. The plaintiffs offered evidence, which was not controverted, that their operations are being conducted profitably, with operating ratios—i.e., the proportion of expense to revenue—ranging from 69 to

92.5 percent. According to the commission's finding in the earlier proceeding, Docket No. 9652-18, none of the common carriers therein appearing could show an operating ratio lower than 92 percent under the rates from which they sought exemption. The fact that this figure was not higher was largely attributable to a single isolated consignee operation which afforded a peculiar and most efficient use of the particular carrier's facilities. P.U.C. Docket No. 9652-18, p. 3 (Mar. 9, 1960).

The named plaintiff offered evidence that its services were confined largely to deliveries of heavy material to construction sites off highways, involving unusual conditions and special equipment. Evidence offered by the Nygard Express Company and Roy Hurlburt showed that they were able to operate profitably because of certain economies inherent in their particular operations. There was no evidence that there were any common carriers operating in the area who were seeking this traffic or were equipped to compete with the plaintiffs even if they all operated on the same rate schedule. See *Briggs* v. *Public Utilities Commission,* 148 Conn. 678, 686, 174 A.2d 529. Competition has been defined as "the effort of two or more parties to secure the custom of a third party by the offer of the most favorable terms." Webster's Third New International Dictionary; see *Russellville Canning Co.* v. *American Can Co.,* 87 F. Sup. 484, 499 (W.D. Ark.). The record in the case at bar shows no such effort. Furthermore, it demonstrates that the contract carrier system is clearly better adapted to the peculiar needs of the plaintiffs' shippers and that it was preferred by them. See *Public Utilities Commission* v. *Utterstrom Bros., Inc.,* 136 Me. 263, 266, 8 A.2d 207.

The result reached by the commission appears to be predicated on the proposition that a loss to common carriers would necessarily result from the rate disparity and that such a loss was ipso facto not in the public interest. Under some circumstances, this proposition might be sound. In the instant case, however, there is no evidence from which facts could be found, and none were found, to support it. It is true that a primary aim of contract carrier regulation is the protection of the common carrier by eliminating destructive competition. *Betterman* v. *American Stores Co.,* 367 Pa. 193, 199, 80 A.2d 66, cert. denied, 342 U.S. 827, 72 S. Ct. 49, 96 L. Ed. 625; *United Parcel Service* v. *Public Utilities Commission,* 240 Wis. 603, 611, 4 N.W.2d 138; *General Mills, Inc.* v. *Steele,* 154 F.2d 367, 374 (5th Cir.), rev'd on other grounds, 329 U.S. 433, 67 S. Ct. 439, 91 L. Ed. 402, rehearing denied, 329 U.S. 834, 67 S. Ct. 628, 91 L. Ed. 706. Nevertheless, the legislature in its regulatory legislation has recognized that contract carriers, because of the special nature of their operations, may properly be accorded some advantage in rates so long as the advantage does not lead to destructive competition inconsistent with the public interest. The legislature has given the commission authority over contract carriers: the commission may issue or refuse permits and impose conditions for the operation of contract carriers; General Statutes §§ 16-291—16-295, 16-304; fix their rates; § 16-296; and revoke their permits; §§ 16-301, 16-302. The legislature has limited the number of contracts each contract carrier may have to not more than four. § 16-297. So long as the contract carrier remains a separate class of carrier, it would appear that the commission has adequate power, when the facts warrant it, to prevent ruinous competition.

The uncontradicted evidence here shows that if the proposed rate increase were put into effect, the plaintiffs' shippers would forsake both contract and common carrier service in favor of private carriage. If they did, such a diversion of trade would not strengthen the common carriers, and it would necessarily be accomplished at the expense of the contract carriers. See *Associated Transports, Inc.* v. *United States,* 169 F. Sup. 769, 773 (E.D. Mo.). The result would clearly not be in the public interest. *Briggs* v. *Public Utilities Commission,* 148 Conn. 678, 683, 174 A.2d 529.

There is error, the judgment is set aside and the case is remanded with direction to render judgment sustaining the appeal and vacating the commission's order.

In this opinion the other judges concurred.