WAMPHASSUC POINT PROPERTY OWNERS ASSOCIATION ET AL. *v.* PUBLIC UTILITIES COMMISSION ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued February 9—decided April 4, 1967

*Thomas J. O'Sullivan,* for the appellants (defendant Smith, trustee, et al.), with whom, on the brief, were *Harold M. Mulvey,* attorney general, and *John G. Hill, Jr.,* assistant attorney general, for the appellant (named defendant).

*William K. Cole,* with whom were *Barclay Robinson, Jr.,* and *J. Rodney Smith,* for the appellees (plaintiff Stickney et al.); with him also was *Morgan K. McGuire,* for the appellee (plaintiff Woolworth).

*Joseph J. Purtill,* town attorney for the town of Stonington, filed a brief as amicus curiae.

HOUSE, J. This appeal was taken by the public utilities commission and the trustees of The New York, New Haven and Hartford Railroad Company from a judgment of the Superior Court which sustained an appeal from an order of the commission directing the installation of safety protective mechanisms at a railroad crossing in Stonington. There is little, if any, dispute about the basic facts in the case, and there is unanimous agreement that the crossing is an extremely hazardous one requiring protective measures. The real dispute appears to be over who should pay for the installation.

Wamphassuc Point Road runs from route 1 in Stonington southerly to a point of land which extends into Long Island Sound. In so doing it crosses at grade the main tracks of the railroad at a location where trains proceed at high speed and the terrain sharply limits the view of persons on the road. The railroad filed a petition with the commission requesting that, under § 16-119a of the General Statutes, it (a) determine that traffic control devices be installed at the crossing with the assessment of a portion of the cost to the owners of real property located on Wamphassuc Point or (b) order the closing of the road to the Point. An obvious reason for the railroad's specific request that the proceedings be pursuant to § 16-119a rather than under other available statutory authority is the provision in that section for the allocation of costs.[1] By its terms, § 16-119a applies, however,

---

[1] "Sec. 16-119a. PRIVATE CROSSINGS; PROTECTION REQUIREMENTS. . . . (b) . . . If under the provisions of subsection (d) the public utilities commission and the state traffic commission order the erection of traffic control devices at a private crossing and the town, city or borough within which such crossing is located fails to erect or have erected such devices within one hundred and eighty days of such order, the public utilities commission and the state traffic

only to protection requirements at a private crossing, which is defined in the statute as "any private way, private drive or any facility other than a public highway for use of pedestrians, motor vehicles or other types of conveyances, which crosses at grade any railroad track."

The status of this crossing was strongly contested at the hearing before the commission, the railroad asserting that the road was a private way as defined in the statute, and the town of Stonington and property owners in the area served by the road claiming that it was a public highway. After a lengthy hearing, once reopened for further evidence from the property owners, the commission concluded that the road was a private way rather than a public highway and, pursuant to § 16-119a, prescribed the installation, at the crossing, of automatically actuated gates, flashing lights and a pedestrian bell. The cost of the prescribed installation was estimated to be approximately $31,000.

From this order, the Wamphassuc Point Property Owners Association and several persons who were users of the road and owned property in the area appealed to the Superior Court. The town of Stonington did not join in that appeal but has filed a brief in this court as amicus curiae in support of the claim of the property owners that the

commission shall order the railroad to erect such devices and the expense thereof shall be a lien on premises owned by the person, association or corporation that owns or has the right to use such crossing. If the public utilities commission and the state traffic commission prescribe traffic control measures in addition to traffic control devices, the town, city or borough shall invoke the provisions of this subsection for the purpose of complying with such order, and the cost thereof . . . if over one thousand dollars, shall be borne one-sixth by the town, city or borough, one-sixth by the state, one-third by the property owner, and one-third by the railroad."

portion of § 16-119a providing for a lien on premises owned by "the person . . . that owns or has the right to use such crossing" or an assessment of costs against "the property owner" is so vague and incapable of application to multiple owners and users in a case such as this one that it is unconstitutional.

In accordance with § 16-37 of the General Statutes, the commission certified to the Superior Court the full record of the proceedings before it, including the petition, the transcript of the hearings, the exhibits, the briefs and the commission's original and supplemental findings and orders. The Superior Court determined the appeal upon this record. It found that the Wamphassuc Point Property Owners Association was not an aggrieved person within the provisions of General Statutes § 16-35 but that the individual owners of property abutting Wamphassuc Point Road were proper parties to appeal. It concluded that Wamphassuc Point Road is now a public highway rather than a private way, and accordingly it sustained the appeal and vacated the commission's order.

As we view the appeal, the decisive issue is a very narrow one. If the road is a private way, as the commission decided it is, General Statutes § 16-119a is properly applicable, the court was in error, and the constitutionality of the cost apportionment provisions of the statute must be determined.[2] On the

---

[2] An additional problem not mentioned by any of the parties arises out of the provision for the apportionment of the cost. General Statutes § 16-119a provides for apportionment of the cost "[i]f the public utilities commission and the state traffic commission prescribe traffic control measures in addition to traffic control devices." Whether the installation prescribed by the commission includes "measures" in addition to "devices" does not appear to have been raised by any party.

other hand, if the road is not a private way but a public highway, as the court concluded it is, the provisions of § 16-119a do not apply, and there is no error in the judgment as rendered.

On the undisputed facts the origins of a road to Wamphassuc Point go back to colonial times, perhaps to before 1730. The railroad crossing came into existence in 1857, and there is conflicting evidence as to whether the road was considered as a public highway by anyone before this century. There was evidence that a way of necessity to the Point was created when the right of way for the railroad line was acquired by condemnation in 1857, and the commission relied in part on evidence that in 1872 the selectmen of Stonington laid out a road over the tracks, describing it as a private way. On all the facts, the commission concluded that, regardless of how the road is presently used, it was a private way in 1883. In that year, the legislature adopted what is now § 16-98 of the General Statutes, providing that, when a new highway is constructed across a railroad, such highway shall pass over or under the railroad as the commission directs. Public Acts 1883, c. 107 § 2; see *New York & N.E.R. Co.* v. *Waterbury,* 55 Conn. 19, 23, 10 A. 162. Because of the provisions of this statute and of § 47-27, which proscribes acquisition of rights in or to land of a railroad company by adverse possession or user, the commission concluded that the "treatment or consideration of this crossing as a public highway crossing subsequent to 1883 could not change it from one private in character to a public crossing in face of the statutory prohibitions set forth in Sections 16-98 and 47-27." In other words, the commission concluded that in 1883 Wamphassuc Point Road was a private way, having been laid out as

such in 1872, and that, because the statutes since 1883 have prohibited construction of any new highway across a railroad at grade, it must follow that such a road in 1963 could not be a public highway even though it had acquired all the indicia of a public highway.

In *Stavola* v. *Palmer,* 136 Conn. 670, 683, 684, 73 A.2d 831, we noted that " 'public highway' is tautology" and approved the dictionary definition of a highway as "[a] main road or thoroughfare; hence, a road or way open to the use of the public." We quoted also (p. 683) from *Laufer* v. *Bridgeport Traction Co.,* 68 Conn. 475, 488, 37 A. 379: "A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle." We also noted that "[t]he essential feature of a highway is that it is a way over which the public at large has the right to pass" and "[a]ccordingly, the term 'highway' is ordinarily used in contradistinction to a private way, over which only a limited number of persons have the right to pass." These definitions are in accord with those used in other sections of the General Statutes.[3]

From early times, under the common law, highways have been established in this state by dedication and acceptance by the public. *Reed* v. *Risley,* 151 Conn. 372, 376, 198 A.2d 55; *DiCioccio* v. *Wethersfield,* 146 Conn. 474, 479, 152 A.2d 308; *State* v. *Taff,* 37 Conn. 392, 398. No particular

---

[3] "Sec. 14-1. DEFINITIONS. . . . (16) 'Highway' includes any state or other public highway, road, street, avenue, alley, driveway, parkway or place, under the control of the state or any political subdivision thereof, dedicated, appropriated or opened to public travel or other use."

"Sec. 12-465. DEFINITIONS. . . . 'public highways' includes every way or place generally open to the use of the public as a matter of right for the purposes of vehicular travel . . . ."

formality is required. *Whippoorwill Crest Co.* v. *Stratford,* 145 Conn. 268, 271, 141 A.2d 241. Both the owner's intention to dedicate the way to public use and acceptance by the public must exist, but the intention to dedicate the way to public use may be implied from the acts and conduct of the owner, and public acceptance may be shown by proof of the actual use of the way by the public. *Johnson* v. *Watertown,* 131 Conn. 84, 89, 38 A.2d 1; *LaChappelle* v. *Jewett City,* 121 Conn. 381, 386, 387, 185 A. 175; *New London* v. *Pequot Point Beach Co.,* 112 Conn. 340, 344, 152 A. 136; *Russo* v. *Seleit,* 98 Conn. 398, 404, 119 A. 569; *Hartford* v. *New York & N.E.R. Co.,* 59 Conn. 250, 254, 22 A. 37. In a determination of the present status of Wamphassuc Point Road, accordingly, it was proper to consider not only such public records as existed concerning the long history of the road but all the circumstances of its layout, construction and long-continued public use.

The Superior Court properly limited its review of the decision of the public utilities commission as provided by § 16-37 of the General Statutes. See *Anthony Augliera, Inc.* v. *Loughlin,* 149 Conn. 478, 481, 181 A.2d 596. It heard no new evidence but reviewed that which had been submitted to the commission and concluded that in reaching its decision the commission had applied erroneous legal principles. It concluded that regardless of what its early history had been "[t]he undisputed evidence presented before the commission requires a finding that Wamphassuc Point Road is now a public highway."

The record clearly supports this conclusion as to the present status of the road. The town claims the road as part of its public highway system. In the 1938 town report, the road was specifically men-

tioned as a part of the town's highway improvement program. Since 1947 the state has contributed to the maintenance of the road, and for at least thirty-five years it has been under the control of the town for public use. The town has placed its street signs to mark the road, patrols it, has macadamized it and maintains it for public use in winter and summer in the same manner as all other public highways in the town. It is used at will, and has been for a period of over thirty-five years, not only by residents at Wamphassuc Point but by the public in general.

We conclude (1) that the court properly decided that the ultimate test in determining whether General Statutes § 16-119a is applicable to an existing road crossing a railroad at grade is not how or when that road came into existence but whether in fact at the time of examination the road is "other than a public highway . . . which crosses at grade any railroad track" and (2) that on the record before the court the road in question is in fact now a public highway so that the provisions of § 16-119a are not applicable to it.

Under the circumstances it is unnecessary for us to consider the asserted infirmities and ambiguities in § 16-119a or the attack on its constitutionality under the holding of such cases as *State* v. *Stoddard,* 126 Conn. 623, 13 A.2d 586.

There is no error.

In this opinion the other judges concurred.