[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Liba H. Furhman, Mayor of the Town of New Milford and the Town of New Milford have appealed from the final decision and order CT Page 683 of the Department of Transportation dated March 3, 1992. The Town of New Milford is the real party in interest in this matter.
The Town of New Milford is the owner of a tract of land consisting of approximately 6.50 acres. This property is subject to an operating easement in favor of Consolidated Rail Corporation (hereafter "Conrail") which permits Conrail to maintain railroad tracks upon and to traverse the property in a north-south direction in connection with its rail operations.
The property is situated at the gateway to New Milford's town green and business district. Record, Item 12, pp. 1-3. The Town has restored the old railroad station situated on the property; and a substantial portion of the remaining property on both the east and west sides of the railroad tracks is used for parking. Persons who park on the west side of the railroad tracks regularly walk across the tracks to reach the commercial establishments located to the east on Railroad and Bank Streets. Record, Item 13, p. 2. No established crossing for such purpose exists, however; and due to the condition of the tracks and surrounding ground, the publics haphazard crossing of the tracks is considered by the Town to be not only inconvenient but also unsafe.
On April 26, 1991, the Town of New Milford and Conrail entered into a license agreement which would permit the construction of a ten (10) foot wide timber and asphalt pedestrian grade crossing over the tracks of Conrail's operating easement.[1] By said agreement, the Town agreed that the crossing would be used only for pedestrian access to the Town's parking lot and for no other purpose.[2] By said agreement, the Town recognized the paramount rights of Conrail in and to its operating easement. Record, Item 4, par. 6. Additionally, the Town recognized that its right to maintain the pedestrian grade crossing was terminable at any time by Conrail on thirty (30) days notice. Record, Item 4, par. 12(a).
Paragraph 7 of the license agreement (Record, Item 4) imposed upon the Town the requirement of protecting the crossing from the standpoint of safety. It also imposed upon the Town the financial burden of any protection devices that might be required by federal, state or local authority.
On August 6, 1991, the then mayor of the Town, Walter J. Rogg, sent a letter to the Department of Transportation requesting advice as to the types of safety devices that would be required for the pedestrian crossing. Record, Item 5. In response to said request, on September 5, 1991, the Department of Transportation initiated proceedings under Section 13b-343 of the General Statutes to prescribe the nature of the warning devices to be installed at the pedestrian crossing. Record, Item 6. After a public hearing CT Page 684 was held on October 28, 1991, and after oral argument held on January 16, 1992, the Department of Transportation issued its final decision on March 3, 1992.
By its final decision, the Department ordered the Town to install two sets of flashing lights, one set east, one set west on one stanchion which is also to include a pedestrian gate and bell. The Town is also ordered to install a second pedestrian gate on the opposite side of the tracks. These devices are to be wired to a "live island circuit", which, in turn, is to be incorporated into a warning system to be installed by others at Bridge Street. Finally, the Town was ordered to install a fence on the west side of the tracks to both the north and the south of the proposed grade crossing. Record, Item 13, pp. 4-5. The cost to the Town of installing the ordered protective devices is estimated by the Department of Transportation to be approximately $150,000.00. Record Item 13, p. 2, Item 8.
The Town's right to install a pedestrian grade crossing upon its property is established by a special act adopted by the legislature in 1989. Special Act 89-32, Section 2 provides:
 . . .that the town of New Milford is authorized to enter into an agreement with Conrail for the construction of a pedestrian, at grade crossing from the municipal parking lot to the railroad station and to Railroad and Bank Streets, and that the town of New Milford and Conrail may enter into an agreement that would allow New Milford to assume responsibility for the costs of maintaining the crossing and for any liability for damages to persons or property as a result of using such crossing. . . .
Special Act 89-32, Section 2, further provides that:
 [s]uch crossing shall be subject to provisions of sections 13b-342 to 13b-347, inclusive, of the general statutes.
Record, Item 3.
In response to Mayor Rogg's request for advice as to the types of safety devices that would be required for the pedestrian crossing, the Department of Transportation initiated proceedings under Section 13b-343 of the General Statutes to prescribe the nature of the warning devices to be installed.
Section 13b-343 provides in relevant part as follows: CT Page 685
 The commissioner of transportation, when requested in writing by the selectmen of any town, the mayor and common council of any city or the warden or burgesses of any borough to order gates, a flagman or electric signals or other signal device to be installed and maintained at any railroad crossing where a railroad crosses a public highway at grade within such town, city or borough, shall hold a hearing thereon or may, on his own motion, hold such hearing, first giving the town, city or borough wherein the crossing is located, and the company operating the railroad, reasonable notice thereof. If the commissioner upon such hearing finds that public safety requires it, the commissioner shall order such company to install and maintain at such crossing, gates, a flagman or such electric signals or other signal device as may be approved by the commissioner, or to do any other act deemed necessary by the commissioner for the protection of the public. . . .If any such company fails to comply with any such order of the commissioner made pursuant to this section, it shall forfeit to the state the sum of fifty dollars for each day of such failure.
The Department of Transportation erred in relying upon the provisions of Section 13b-343 to order the Town to install the specified devices as part of its pedestrian grade crossing. A Section 13b-343 proceeding may be initiated by a town when that town seeks to require a railroad, as a matter of public safety, to install protective devices at a grade crossing. In this case, the Town of New Milford did not initiate proceedings under Section 13b-343. To the contrary instead of seeking an order requiring the installation of protective devices consisting of gates and electrical signalling devices, the Town requested that it not be required to install gates or signals at the proposed pedestrian grade crossing. Record Item 12, pp. 3-4.
Section 13b-343 contemplates that an order issued pursuant to its provisions shall be directed against the railroad company whose rail line is crossed by the grade crossing. The statute specifically provides that "the commissioner shall order such company to install and maintain" such protective devices. Moreover, it also provides that a penalty may be imposed against any railroad company which fails to comply with such order. In the present case, however, the Department of Transportation's order is effectively directed against the Town of New Milford. Not only is the Town required to install the specified protective devices so that it may construct the pedestrian crossing, it is also required to provide for the continued maintenance of the crossing's protective devices. See Record, Item 4, par. 7; Item 13, pp. 4-5. Nothing contained in Section 13b-343
CT Page 686 authorizes the Department of Transportation to direct the Town of New Milford to install or maintain the protective devices which have been ordered.
Finally, Section 13b-343 applies only to the situation where "a railroad crosses a public highway at grade." This case does not involve a public highway grade crossing over the Conrail line. Neither the Town owned property, nor the proposed pedestrian grade crossing, have ever been dedicated for use as a public highway; and neither have ever been accepted into the Town highway system. By virtue of its ownership and control of the property, the Town is free to chance the use of the property from parking and to discontinue the grade crossing at any time. The Town has a right to bar the general public from using the property altogether. Moreover, by virtue of the license agreement, Conrail also has the right to terminate the grade crossing at any time that Conrail deems such action appropriate. Record, Item 4, paragraph 12. Thus, although located on Town owned land, the proposed pedestrian grade crossing cannot be construed to be a public highway.
Black's Law Dictionary, Fifth Edition defines highway as follows:
 Highway. A free and public roadway, or street; one which every person has the right to use. In popular usage, refers to main public road connecting towns or cities. In broader sense, refers to any main route on land, water, or in the air. Its prime essentials are the right of common enjoyment on the one hand and the duty of public maintenance on the other. . .
 The term "highway," as generally understood, does not have a restrictive or a static meaning, but it denotes ways laid out or constructed to accommodate modes of travel and other related purposes that change as customs change and as technology develops, and the term "highway," as it is generally understood, includes areas other than and beyond the boundaries of the paved surface of a roadway.
 Commissioners of Highways. Public officers appointed in states, counties and municipalities to take charge of constructing, altering, repairing and vacating of highways within their respective jurisdictions. Common highway. A road to be used by the community at large for any purpose of transit or traffic.
 Highway acts, or laws. The body or system of laws governing the laying out, construction, repair, and use of highways.
CT Page 687
 Highway crossing. A place where the track of a railroad crosses the line of a highway.
The term "public highway", as used in Section 13b-343 is not specifically defined. Section 1-1(a) of the General Statutes, provides that:
 [i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly.
Title 13a of the General Statutes deals with the construction and maintenance of state and local highways and bridges. Section 13a-1(a) defines the term "highway" to include "streets and roads." This definition is incorporated into the State Transportation Act, Sections 13b-1 through 13b-57c by virtue of Section 13b-2(e).
Section 13b-292 of the General Statutes defines a "private crossing" as
 any private way, private drive or any facility other than a public highway for the use of pedestrians, motor vehicles or other types of conveyance which crosses at grade any railroad track. (Emphasis added)
Clearly, the Town's proposed pedestrian grade crossing can be easily reconciled with the definition of "private crossing" as set forth in Section 13b-292.
At common law, the distinction between public and private ways has been recognized. In Wamphassuc Point Property Owners Association v. Public Utilities Commission, 154 Conn. 674 (1967), the Supreme Court stated at page 680:
 In Stavola v. Palmer, 136 Conn. 670, 683. . .we noted that "`public highway" is tautology' and approved the dictionary definition of a highway as `[a] main road or thoroughfare; hence a road or way open to the use of the public.' We quoted also. . .from Laufer v. Bridgeport Traction Co., 68 Conn. 474, 488 . . . `A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle.' We also noted that the essential feature of a highway is that it is a way over which the public at large has the right to pass and `[a]ccordingly, the term "highway" is ordinarily used in contradistinction to a private way, over which CT Page 688 only a limited number of persons have the right to pass.' . . .
 From early times, under the common law, highways have been established in this state by dedication and acceptance by the public. . . .No particular formality is required. . . .Both the owner's intention to dedicate the way to public use and acceptance by the public must exist. . . .(Citations omitted.)
154 Conn. at 680-681.
In the present case, no evidence exists to demonstrate that the proposed pedestrian grade crossing has been dedicated by the Town for use as a public highway. In fact, a dedication cannot occur by virtue of the terms of the license agreement which the Town has executed with Conrail. Record 4, License Agreement Para. 1(b) and 14(b).
Additionally, the pedestrian grade crossing is not for the use of the public at large.[3] Instead, it is to be used only by those persons who park their vehicles in the parking area located to the west of the Conrail tracks; and only for so long as the Town continues to use such property for parking.
The court finds that the Department's reliance on General Statute13b-343 was misplaced and therefore is not authority for its decision.
Judicial review of an agency decision is governed by the provisions of the Uniform Administrative Procedure Act. Under Section 4-183(j), the "substantial evidence" rule governs judicial review of administrative fact finding. Briggs v. State Employees Retirement Commission,210 Conn. 214, 217 (1989); Miko v. Commission on Human Rights and Opportunities, 220 Conn. 192, 200 (1991).
 The agency's decision must be sustained if an examination of the record discloses evidence to support any one of the reasons given [for the agency action]. . . .The evidence, however, to support any such reason must be substantial; . . .[E]vidence is sufficient to sustain an agency finding if it affords `a substantial basis of fact from which the fact in issue can be reasonably inferred. . .' [The substantial evidence rule] is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is a review of such breath as is entirely consistent with effective administration.
CT Page 689
Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525, 539-541
(1987). In determining whether an administrative finding is supported by "substantial evidence," the reviewing court must defer to the agency's assessment of the credibility of witnesses. Briggs v. State Employees Retirement Commission, 210 Conn. at 217. Ultimately, "the question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports the action taken." Williams v. Liquor Control Commission, 175 Conn. 409, 414 (1978); Miko v. Commission on Human Rights and Opportunities, 220 Conn. at 200-201.
In light of the "substantial evidence" rule, agency decision making must be based not the mere possibility of a fact but rather upon the probability of the existence of such fact based upon the evidence on the record. Anthony Augliera, Inc. v. Loughlin, 149 Conn. 478, 484-486 (1962).
The Department of Transportation's final decision is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. The evidence demonstrates that at the present time, only two train trips per day, operating at speeds of less than 10 miles per hour, pass by the proposed pedestrian grade crossing. Moreover, these trains sound their whistle and come to a complete stop at Bridge Street, just 250 feet south of the proposed grade crossing. Record, Item 8. No evidence exists to suggest that the construction of the proposed grade crossing without the required bell, flashing lights and pedestrian gates will cause any danger whatsoever to pedestrians. In fact, the contrary is true. The evidence demonstrates that the area of the proposed grade crossing is presently dangerous, not because of passing trains, but rather because of the dangerous condition of the footing to which pedestrians are now exposed when crossing.
The Department of Transportation unlawfully disregarded the evidence concerning the actual nature of the crossing; therefore, it cannot be found that such agency's decision is supported by "substantial evidence" on the whole record.
The record indicates that a possibility exists that the volume of train traffic passing the proposed grade crossing may either increase or decrease at some time in the future. The maximum potential is five train trips per day versus a potential that train service will be entirely discontinued. Record, Item 12, p. 5. The record suggests that the decision to order the specified protective devices was based, in part, on the "possibility" that train traffic might increase at some undetermined time in the future. Record, Item 13, p. 2.
As noted above, however, evidence of mere possibilities are not CT Page 690 sufficient to support agency action. An administrative order must be responsive to conditions actually found to exist. In Anthony Augliera, Inc. v. Loughlin, supra, at 478, a case dealing with the question of whether certain trucking companies were in competition, the Court stated: "The commission, taking into consideration all of the factors pertinent to a particular case, must have before it sufficient proof to enable it reasonably to conclude that there is competition, not as a mere possibility, but as a probability. . ." 149 Conn. at 484. (Emphasis added)
In this case, no evidence exists to support the need for the extreme and costly safety measures required to protect pedestrians against injury from the few slow moving trains which will pass the proposed crossing. The decision is not based upon the factors applicable to this crossing at the present time. The decision is not supported by the substantial evidence of the whole record. As such, the decision is reversed pursuant to the provisions of Section 4-183(j) of the General Statutes.
PICKETT, J.
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.]