ARTHUR LUF ET AL. *v.* TOWN OF SOUTHBURY

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued June 11—decision released September 14, 1982

*Anthony M. Fitzgerald,* with whom was *Thomas P. Byrne,* for the appellant-appellee (defendant).

*Samuel J. Henderson,* for the appellees-appellants (named plaintiff et al.).

*Dennis N. Garvey,* with whom were *Edward L. Walsh* and, on the brief, *Ralph K. Winter,* for the appellees (James H. W. Conklin II, administrator, estate of Francis H. Harris et al.).

PETERS, J. This is an action seeking to recover damages from a town for its lawful discontinuance of an unimproved public highway. The plaintiffs, Arthur B. and Nellie Luf; Fred B. Rosnick; James H. W. Conklin II, administrator of the estate of Francis Hicock Harris; and Gus J. and Elaine Procopian, beneficiaries of the estate of Francis Hicock Harris, are owners of or have an actionable interest in land abutting East Hill Road, the discontinued road. They allege that the action of the defendant, the town of Southbury, was in legal effect a constitutional taking of their property for which the defendant was required to pay compensation. The trial court rendered a judgment awarding damages to each of the plaintiffs from which the defendant has appealed and some of the plaintiffs have cross appealed.

The underlying facts are established in the trial court's memorandum of decision and are essentially

undisputed. East Hill Road is an east-west road in Southbury that runs east from Poverty Road through Heritage Village to South Britain Road (also known as state highway Route 172). Since 1966, when the town adopted a comprehensive plan of development, East Hill Road had been designated as a "Primary Collector" road and "an important east-west road connection." The town, in 1972 and 1975, reaffirmed the use of East Hill Road as part of its traffic circulation system. Thereafter, when the Heritage Village community was developed, the western end of East Hill Road was improved; the expense of that improvement was borne in part by the Heritage Village developers. In the plan for Heritage Village, a 200 foot buffer zone on the Village's eastern end was purposely left undeveloped. The improved portion of East Hill Road comes to the 200 foot strip, leaving the rest of the road within the strip unimproved. In the fall of 1977, the town, at the request of many of the residents of Heritage Village, voted, pursuant to General Statutes § 13a-49,[1] to discontinue all of the unimproved portion of East Hill Road. That action was legally

---

[1] "[General Statutes] Sec. 13a-49. DISCONTINUANCE OF HIGHWAYS OR PRIVATE WAYS. The selectmen of any town may, subject to approval by a majority vote at any regular or special town meeting, by a writing signed by them, discontinue any highway or private way, or land dedicated as such, therein, except when laid out by a court or the general assembly, and except where such highway is within a city, or within a borough having control of highways within its limits. Any person aggrieved may be relieved by application to the superior court, to be made and proceeded with in the manner prescribed in section 13a-62. Whenever a petition has been presented to the selectmen for such discontinuance of any land dedicated as a highway or private way but which has not been actually used, worked or accepted, as a highway, by the town, and such discontinuance has not been made by the selectmen and approved by the town within twelve months after such presentation, any person aggrieved may be relieved by application to said court, to be made and proceeded with in the manner prescribed in section 13a-62."

challenged[2] and thereupon sustained by the Superior Court which found that "common convenience and necessity do not require the continuance . . ." of the road. The present law suit ensued.

The property which the plaintiffs own, insofar as it abuts East Hill Road, is unimproved property. The property of the plaintiffs Luf and Rosnick does not abut on any other public highway; the Harris property has, in addition to its frontage on East Hill Road, a limited frontage on South Britain Road (Route 172). Although the plaintiffs' principal claim is that the discontinuance of East Hill Road has deprived them of access to the existing public road system, it is important to an evaluation of this claim to note what the record shows about the condition of East Hill Road. Both before and after its discontinuance, the road was not only unimproved but also impassable by vehicle. Because of years of neglect, disuse and disrepair, the road was barely visible, the road bed overgrown with grass, bushes and tree saplings. The discontinuance of the road therefore imposed no new physical barrier upon the plaintiffs' enjoyment of their property.

The trial court found that the plaintiffs had suffered a substantial and material impairment in their legal right of access to the public highway system because of the discontinuance of East Hill Road. The court further found that the plaintiffs' access rights were not sufficiently protected by General Statutes § 13a-55, on which the defendant

---

[2] That unsuccessful suit, *Rosnick* v. *Kenney,* Superior Court, judicial district of Waterbury, Docket No. 33376, April 14, 1978, was brought, in accordance with General Statutes § 13a-62, by some of those who are plaintiffs here. No appeal was taken from that judgment of the Superior Court.

relied, because that statute was of doubtful constitutionality. It then found, with respect to damages: that Arthur and Nellie Luf had suffered a devaluation of their property, as of December 1, 1977, the date of discontinuance, from $55,000 to $22,000, a loss of $33,000; that the Harris estate, on similar reasoning, had decreased in value from $209,000 to $126,000, a loss of $83,000; and that Rosnick's parcel had been devalued from $193,000 to $77,200, a loss of $115,800. In a revision of its initial judgment, the court awarded each of the plaintiffs interest from the date of the "taking," December 1, 1977.

The defendant's appeal challenges the trial court's interpretation of § 13a-55. Urging this court to find the statute both a constitutional legislative act and an effective safeguard of the plaintiffs' access rights, the defendant claims that the plaintiffs have established neither a constitutional taking of their property nor a proven claim to damages. The plaintiffs Luf and Rosnick in their cross appeal maintain (1) that we should expressly declare General Statutes § 13a-55 to be unconstitutional and (2) that their damages should be measured by the diminution in their property's value not when the road was discontinued, the date selected by the trial court, but rather when that discontinuance became final, i.e., August 1, 1978. The remaining plaintiffs, whose interest is in the Harris estate, have not cross appealed.[3]

Because of the close interrelationship of the various issues raised in the appeal and the cross appeal, we will deal with them together rather than sequentially. We will first address the question whether the discontinuance of East Hill Road served totally

[3] Although they too had filed a timely cross appeal, they withdrew their cross appeal in their brief in this court.

to destroy the plaintiffs' constitutionally protected right to access. That question necessarily requires us to determine the impact and the constitutionality of General Statutes § 13a-55. We will then consider whether the plaintiffs, even in the absence of total destruction of their access rights, may nonetheless recover damages because their remaining access rights have been substantially impaired.

## I

The basic principles that govern this controversy are well established. Our law has long ago settled the property rights that inhere in a public highway before its abandonment or discontinuance.

The existence of East Hill Road as a public highway before its discontinuance in 1977 is undisputed. Under our law, such a highway creates no interests in fee, the presumption being that the landowners whose lands abut the highway continue to be the owners of the soil to the middle of the highway. *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 355–56, 114 A.2d 216 (1955); *Newton* v. *New York, N.H. & H. R. Co.,* 72 Conn. 420, 426–27, 44 A. 813 (1899); *Peck* v. *Smith,* 1 Conn. 103, 132, 6 Am. Dec. 216 (*Swift, J.*) (1814); 2 Nichols, The Law of Eminent Domain (3d Ed. Rev. 1981) § 6.32 [2]. Instead of creating a fee, the taking of the highway creates two easements: the public easement of travel, that permits the general traveling public to pass over the highway at will, and the private easement of access, that permits landowners who abut the highway to have access to the highway and to the connecting system of public roads. *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* supra; *Knothe* v. *Zinzer,* 96 Conn. 709, 713–15, 115 A. 477 (1921); *Park City Yacht Club* v. *Bridgeport,* 85 Conn. 366, 371–72,

82 A. 1035 (1912); *Cullen* v. *New York, N.H. & H. R. Co.,* 66 Conn. 211, 226, 33 A. 910 (1895); see 2 Elliott, The Law of Roads and Streets (4th Ed. 1926) § 1180; 10 McQuillin, The Law of Municipal Corporations (3d Ed. Rev. 1981) § 30.54. Our principal concern is with the abutter's private easement of access.

A landowner who, as a result of governmental action, suffers a total and permanent loss of his right of access to the public way adjacent to his land and to the system of public roads is entitled to recover damages. Total deprivation of his right to access constitutes a taking of his property, an inverse condemnation of his property rights, in violation of article first, § 11 of the constitution of Connecticut and of the fifth amendment to the United States constitution.[4] *Laurel, Inc.* v. *State,* 169 Conn. 195, 201, 362 A.2d 1383 (1975); *Cone* v. *Waterford,* 158 Conn. 276, 279–80, 259 A.2d 615 (1969); *Park City Yacht Club* v. *Bridgeport,* supra, 373; *Cullen* v. *New York, N.H. & H. R. Co.,* supra, 224–26; see 2 Nichols, loc. cit.; Stoebuck, "The Property Right of Access Versus the Power of Eminent Domain," 47 Texas L. Rev. 733, 733–38 (1969).

[4] Article first, § 11, of the Connecticut constitution states: "The property of no person shall be taken for public use, without just compensation therefor."

The fifth amendment to the United States constitution states, in relevant part: "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation." This provision applies to the states; *Chicago, Burlington & Quincy R. Co.* v. *Chicago,* 166 U.S. 226, 233–34, 17 S. Ct. 581, 41 L. Ed. 979 (1897); by virtue of the fourteenth amendment to the United States constitution.

Both the Connecticut and the federal constitutional provisions limit the right to compensation to those instances in which there has been a *taking* of private property. We note that, in some states, the constitutions provide compensation when private property is *taken* or damaged. See 2 Nichols, The Law of Eminent Domain (3d Ed. Rev. 1981) § 6.1 [3].

Before the effective date of General Statutes § 13a-55, this court held compensable the total and permanent destruction of a right of access caused by the discontinuance of the public highway which had provided the abutting owner with his only practical access to the public highway system. *Cone v. Waterford,* supra. Like the case before us, *Cone* involved the valid discontinuance of an unimproved road, and the property rights of abutting owners whose land was, as of the time of suit, unimproved. Like the case before us, *Cone* was governed solely by constitutional principles, there being no statutory basis for affording the plaintiffs the relief they sought and obtained.

But for the enactment of § 13a-55, this case would unquestionably be governed by our holding in *Cone.* Not surprisingly, the plaintiffs urge the continued viability of *Cone,* while the defendant maintains that *Cone* has been superseded by § 13a-55. We agree with the defendant.

Although *Cone* was in fact decided after the enactment of § 13a-55, the opinion in this court did not address the statute. It is a reasonable inference that the court thought § 13a-55 inapplicable because the highway there in issue was discontinued before the statute's effective date. Since a constitutional taking was found to have occurred at the time of the highway's discontinuance, and since the defendant did not urge the retroactivity of § 13a-55, the court had no occasion to decide the case on other than common law principles. See, e.g., *Seals* v. *Hickey,* 186 Conn. 337, 347, 441 A.2d 604 (1982).

We must therefore determine, as a matter of first impression, whether the plaintiffs have suffered a total and permanent destruction of their

right of access when § 13a-55 now provides that "[p]roperty owners bounding a discontinued or abandoned highway shall continue to have a right-of-way over it to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway."[5] It is conceded that the proviso has no application to the present litigation.

The effect of § 13a-55 is to alter the common law consequences of the discontinuance of a public highway. While, before the statute, discontinuance extinguished both the public easement of travel and the private easement of access; *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* supra, 356; *Peck* v. *Smith,* supra, 146; after the statute, the public easement ceases but the private easement remains. The abutting owners now continue to have an easement of access over the discontinued highway. Their easement of necessity includes the right to travel over and to improve the existing roadbed of East Hill Road. *Holt* v. *Wissinger,* 145 Conn. 106, 111, 139 A.2d 353 (1958); *Lake Garda Co.* v. *D'Arche,* 135 Conn. 449, 454-55, 66 A.2d 120 (1949). On its face, therefore, the statute operates to preserve rather than to destroy the plaintiffs' right of access.

The plaintiffs interpose two objections to this interpretation of § 13a-55. Some of the plaintiffs argue that the statute is unconstitutional and all of the plaintiffs urge that it is unworkable. We find neither argument persuasive.

---

[5] As originally enacted, Public Acts 1959, No. 674, § 3, merely stated: "Property owners bounding a discontinued or abandoned road shall continue to have a right of way over it to the nearest or most accessible public highways." The proviso for limited access highways was added by Public Acts 1963, No. 226, § 55. There is no reported legislative history for the statute's principal provision.

The constitutional attack on § 13a-55 maintains that the statute impermissibly authorizes a taking of private property for private purposes, without payment of compensation and without adequate procedural safeguards. The basic premise of this attack is that there has been a new taking of private property by virtue of § 13a-55, that § 13a-55 allows a town to impose on private land an additional easement or servitude that did not previously exist. This premise is, however, a misreading of our common law. When East Hill Road was originally accepted as a public highway, there was, at that time, a taking of the dual easements of public travel and private access. No new taking was authorized by § 13a-55, which merely served to continue an existing easement which, by common law presumption, we had previously deemed abolished upon discontinuance of a public highway. The alteration of a common law presumption is not an unconstitutional act. The common law presumptions that attend the acceptance and the abandonment of public highways have always varied considerably from state to state, and the legislature is free to make substantive changes in such important ground rules. Cf. *Hamilton, Glendale & Cincinnati Traction Co.* v. *Parish,* 67 Ohio St. 181, 193–94, 65 N.E. 1011 (1902); 2 Nichols, The Law of Eminent Domain (3d Ed. Rev. 1981) § 6.32 [2]. No other result is consistent with the established "rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Silver* v. *Silver,* 280 U.S. 117, 122, 50 S. Ct. 57, 74 L. Ed. 221 (1929); and see *Gentile* v. *Altermatt,* 169 Conn. 267, 285–86, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Pierce* v. *Albanese,* 144 Conn. 241,

250–51, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957).

The procedural attack on the constitutionality of § 13a-55 is no more compelling. The defendant's original taking of the easements for East Hill Road is unchallenged. The defendant's partial discontinuance of East Hill Road was judicially found to have been governmental action justifiably taken in pursuit of "common convenience and necessity," as General Statutes § 13a-62 requires.[6] The legitimate public purpose served by a proper discontinuance of an unwanted public road; see *Olmstead* v. *Camp*, 33 Conn. 532, 548, 89 Am. Dec. 221 (1866); the relief of the town exchequer from possible future charges for maintenance and improvement of the road, does not become an impermissible private purpose because of the incidental preservation of the private easement of access.

Furthermore, the opportunity afforded by General Statutes § 13a-62 for judicial review[7] of the town's decision to lay out or to discontinue a highway comports with the requirements of procedural

---

[6] General Statutes § 13a-62 applies to discontinuances by virtue of the provisions of § 13a-49. Section 13a-62 provides, in relevant part: "Any person aggrieved by the doings of the selectmen in laying out a highway may, within eight months after the survey thereof has been accepted by the town, apply to the superior court for the judicial district in which such town is located for relief, causing such selectmen to be cited to show cause why such relief should not be granted. Such application shall be heard and determined by a committee of three disinterested persons to be appointed by the court. If such committee finds that such highway is not of common convenience and necessity, said court shall set aside such layout, and, if said court sets aside such layout, the costs shall be paid by the town; but, if such committee finds that such highway is of common convenience and necessity, the application shall be dismissed with costs."

[7] This was the section relied upon in the proceedings denominated *Rosnick* v. *Kenney*, see footnote 2, supra.

due process.[8] Although the plaintiffs Luf and Ros-nick complain that § 13a-62 failed to provide the requisite notice or hearing, they have provided no foundation for this complaint. They have offered no explanation why this issue survives either their actual notice of the discontinuance proceedings; see *Weil* v. *Miller,* 185 Conn. 495, 499, 441 A.2d 142 (1981); or the hearing that was actually held upon application to the Superior Court. Relying on the bald assertion of facial unconstitutionality, they have cited no authority for so sweeping an indict-ment of a statute, which like all other legislative enactments, we must consider presumptively con-stitutional. Although a particular public hearing may fail to afford interested persons a sufficient opportunity to present their views concerning the discontinuance of a public road; see *General Dynamics Corporation* v. *Groton,* 184 Conn. 483, 493, 440 A.2d 185 (1981); the underlying statutory provision does not itself become unconstitutional for that reason.

Even if § 13a-55 is not unconstitutional, the plain-tiffs argue that the easement that it preserves is so unworkable that there has nonetheless been, in prac-tical effect, a total constitutional taking of their right of access. They urge us to hold that the diffi-culties which they might encounter in improving East Hill Road to permit vehicular access are so overwhelming that the preservation of their ease-ment in the road as it presently exists is too ephe-meral to constitute a real right of access. There are two answers to this assertion, one qualitative and one quantitative. In the first place, the plain-tiffs had no assurance that, without its discontinu-ance, they could have compelled town improvement

[8] U.S. Const., amends. V, XIV; Conn. Const., art. I, §§ 8, 10.

of East Hill Road. The same factors that led to judicial recognition that public convenience and necessity supported the road's discontinuance would, in all probability, have supported a finding that improvements in the road were presently unwarranted. In the consideration of whether there has been a constitutional taking, it is the circumstances at the time of the taking, not at some hypothetical future time, that are dispositive. See *Tandet* v. *Urban Redevelopment Commission*, 179 Conn. 293, 298, 426 A.2d 280 (1979). In the second place, the plaintiffs' assertion comes down to the cost of ascertaining the dimensions of the existing roadbed and the expense of seeing to its upgrading. Even if such upgrading would impose an economic burden and might allow freeloading by neighbors who would benefit from improvement of access, such economic costs would not establish a present total destruction of the plaintiffs' right of access. Both before and after the discontinuance of East Hill Road, the plaintiffs have an unabated right to use that roadbed in its unimproved condition, or with whatever improvements they find it profitable to make, to get to and from their unimproved land.

## II

Our decision that § 13a-55 preserved for the plaintiffs a less valuable but nonetheless legally viable right of access to the public highway system requires us to reach the plaintiffs' alternate assignment of error. Has the diminution of their access rights, in practical effect, so drastically impaired the economic utilization of their lands that the discontinunce of East Hill Road is, as to them, a taking of their property?

In addressing this question, we do not write on a clean slate. Public regulation of land use and development pursuant to the exercise of the police power often results in some diminution of the property rights of a particular landowner. Whether the value of property is decreased because of the discontinuance of a road, or the creation of a historic district; *Figarsky* v. *Historic District Commission,* 171 Conn. 198, 210, 368 A.2d 163 (1976); or the designation of inland or tidal wetlands; *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 695, 433 A.2d 999 (1980); *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 353, 362 A.2d 948 (1975); the underlying principles are the same. "[I]t has often been noted that the police power, which regulates for the public good the uses to which private property may be put and requires no compensation, must be distinguished from the power of eminent domain, which takes private property for a public use and requires compensation to the owner. . . . The difference is primarily one of degree, and the amount of the owner's loss is the basic criterion for determining whether a purported exercise of the police power is valid, or whether it amounts to a taking necessitating the use of the power of eminent domain." *Figarsky* v. *Historic District Commission,* supra, 210–11; see *DeMello* v. *Plainville,* 170 Conn. 675, 679, 368 A.2d 71 (1976); 1 Nichols, The Law of Eminent Domain (3d Ed. Rev. 1981) § 1.42; Tondro, Connecticut Land Use Regulation (1979) pp. 5–11; Michelman, "Property, Utility, and Fairness: Comments on the Ethical Foundations of 'Just Compensation' Law," 80 Harv. L. Rev. 1165, esp. 1190-93, 1229-34 (1967); Sax, "Takings and the Police Power," 74 Yale L.J. 36, esp. 50-67 (1964).

The plaintiffs argue that there has been a taking of their property because the value of their lands has been severely diminished in two respects: (1) their remaining rights of access to the public highway system are impractical; and (2) their prospective rights to subdivide their property are impaired. These were essentially the findings of the trial court, which ruled that the discontinuance of East Hill Road "substantially and materially reduced practical access from the plaintiffs' land to the public highway system through which access a reasonable use can be made of the property." These findings were, however, as the court expressly noted, the result of the court's concomitant conclusion that "the alleged access to the parcels which now remains . . . is of questionable value because of the aforesaid constitutional issue [i.e., the constitutionality of § 13a-55]." Since, as part I of this opinion demonstrates, we do not share the trial court's constitutional doubts, we are not bound by the trial court's findings, which necessarily reflect the trial court's erroneous assumption of the ineffectiveness of § 13a-55.

Standing by itself, the plaintiffs' claim of a right to compensation based solely on their diminished right of access is not persuasive. For all of the reasons given in part I, supra, their physical rights to traverse East Hill Road are presently unaffected by its discontinuance. Their interest in its improvement, at some indefinite time in the future, was not separately quantified in the testimony that was presented at trial. It is doubtful whether such evidence would in any case have sufficed to establish damages in light of our rule that a determination of fair market value would be impermissibly speculative if it depended upon the showing of a "distant cost

of the conversion or the profits to be derived there-from . . . ." *Tandet* v. *Urban Redevelopment Commission,* 179 Conn. 293, 301, 426 A.2d 280 (1979); *Andrews* v. *Cox,* 127 Conn. 455, 462–63, 17 A.2d 507 (1941).

The plaintiffs' more pressing claim is that the discontinuance of East Hill Road affects the present value of their property because, without frontage on a public highway, they could not reasonably expect to subdivide their property. The trial court found that prior to the discontinuance, the highest and best use of the plaintiffs' lands was to develop these lands for residential purposes, but that after the discontinuance, the highest and best use was to merge with adjacent lands that have independent access to the public highway system. That finding was, however, based on the testimony of experts who erroneously assumed the lack of feasible access over East Hill Road.

In the current state of the record, we do not know whether there has been a taking on this basis because we cannot predict what response the plaintiffs would encounter if they were to present subdivision proposals of their own to the appropriate Southbury authorities. Although we have been alerted to the existence of numerous local regulations that may pose problems, we cannot predict how they would be applied or what account they would take of the plaintiffs' continued access rights over East Hill Road. Nor may we assume that the proper authorities would turn away the plaintiffs' applications for improper political reasons. Cf. *Marmah, Inc.* v. *Greenwich,* 176 Conn. 116, 121–22, 405 A.2d 63 (1978). As we have repeatedly held under similar circumstances, "[u]ntil it appears that the plaintiff has been finally deprived . . . of

the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation." *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 658, 153 A.2d 822 (1959); see *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 358, 362 A.2d 948 (1975).

This salutary rule of abiding the event, of awaiting the outcome of specific local responses to specific development proposals, is not, as the plaintiffs claim, undermined by our recent decision in *Laurel, Inc.* v. *Commissioner of Transportation,* 180 Conn. 11, 428 A.2d 789 (1980) (*Laurel III*). In *Laurel III,* the property owner, prior to the time of the taking, had obtained a special permit from the town planning and zoning commission for the construction of a substantial number of condominiums. That special permit required access and egress to be limited to the one abutting road which was subsequently closed off by virtue of the state's construction of the Merritt Parkway. Before the taking, the property owner had not only assembled a development package with a cognizable fair market value, but had entered into contracts to finance the project and to obtain necessary labor and supplies and had expended more than $1,600,000 for the purchase of the land and for improvements thereon. Immediately upon receiving notice of the taking, the owner, upon the advice of counsel and of town officials, stopped all work on the project. The town planning director testified that there was no reasonable probability that the owner would obtain the necessary special permits after the taking. We held that, "[i]n view of the progress Laurel had made on the project as of the date of the taking, it cannot be said that the evidence

showed that Laurel's proposed use of the land and the profits to be derived therefrom were too remote and speculative . . . ." Id., 44. The plaintiffs in the present case have obtained no permit, have entered into no contracts, and have, as yet, expended nothing on improvements of their lands.[9]  They are governed by *Vartelas* and by *Brecciaroli* because they do not present the exceptional facts of *Laurel III.*

Cogent reasons of policy dictate that we defer definitive resolution of the plaintiffs' claims for compensation to await a local administrative response to their development plans. We recognize, as do some commentators, that no bright line clearly demarcates those diminutions in value that are compensable as a taking from those that are not so compensable. See *Goldblatt* v. *Hempstead*, 369 U.S. 590, 594, 82 S. Ct. 987, 8 L. Ed. 2d 130 (1962); Michelman, "Property, Utility, and Fairness:  Comments on the Ethical Foundations of 'Just Compensation' Law," 80 Harv. L. Rev. 1165 (1968); Sax, "Takings and the Police Power," 74 Yale L.J. 36 (1964).  Because what constitutes a taking is difficult to define and what amount is just compensation is difficult to calculate, a court, in the proper circumstances, is well advised to stay its hand to allow for political choices and settlements that are outside of the judicial competence.  It is for the town of Southbury in the first instance to decide whether to exercise the police power in order

[9] We note that it was the defendant town that moved, and the plaintiffs that resisted, an effort to stay the proceedings in the trial court to enable the plaintiffs to pursue their administrative remedies. Although the trial court, *Stoughton, J.,* was right in principle that the plaintiffs were entitled to pursue their claim for damages in whatever way they saw fit, he considered only the plaintiffs' claim of a direct injury to their rights of access and not the possible impairment of their opportunities to subdivide their properties.

to reach an accommodation with the plaintiffs in their desire to subdivide their properties or, alternatively, to deny the plaintiffs all subdivision rights and pay them compensation. See Michelman, supra, 1252–57. Until specific subdivision proposals are submitted to the town zoning authorities, these plaintiffs have not established that they have been deprived of the reasonable and proper use of their properties. See *Agins* v. *Tiburon,* 447 U.S. 255, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980).

Because some impairment of access rights and some diminution in the total value of property do not, without more, justify a conclusion that there has been an unconstitutional taking; *Manor Development Corporation* v. *Conservation Commission,* supra, 695; *Brecciaroli* v. *Commissioner of Environmental Protection,* supra, 356; *Vartelas* v. *Water Resources Commission,* supra, 658; the trial court's judgment for the plaintiffs was in error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.