BRUCE E. CHAPUT ET AL. *v.* FLORA CLARKE
(10078)

DALY, FOTI and FREEDMAN, Js.

Argued January 7—decision released March 3, 1992

*Jackson T. King, Jr.,* with whom, on the brief, was *Jeffrey R. Godley,* for the appellant (defendant).

*Barry D. Guliano,* for the appellees (plaintiffs).

FREEDMAN, J. This appeal arises from the plaintiffs' action seeking an injunction barring the defendant from closing, obstructing, or interfering with the plaintiffs' use of a right-of-way that crosses the defendant's land. The trial court granted the injunction and awarded nominal damages to the plaintiffs. The defendant raises two issues on appeal: (1) whether the town of Scotland created an easement or right-of-way when it voted to close old Khourie Road on July 10, 1947, and (2), if such an easement or right-of-way was created, whether the deed conveying the plaintiffs' property to them was sufficient to pass rights to the right-of-way. We affirm the judgment of the trial court.

On November 26, 1946, the plaintiffs' predecessors in title, Alfred E. Fredette and Rose M. Fredette, purchased a twenty acre parcel of real estate on Khourie Road in the town of Scotland. At that time, a dirt driveway extended into the parcel from a sharp bend in Khourie Road. The defendant's husband, John T. Clarke, owned a summer house that also bordered on Khourie Road.

On July 10, 1947, the town of Scotland voted to "close for Town use, a section of old road-bed beginning just past the Dr. Clarke place and leading into the pasture and woodland formerly owned by [the Fredette's predecessor in title]; the same to become a road to be used by the owner or owners of said property." The area that the town closed was an unpaved section of road shaped like an inverted "V" referred to by the parties as "old Khourie Road." The eastern branch of the V and the upper part of the western branch formed part of the boundary between the Fredette and Clarke land. The lower portion of the western branch ran through the Clarke land from the boundary with the Fredette land to the new section of Khourie road created by the town after the 1947 vote. The only part of "old Khourie Road" that is in dispute is the lower portion, which lies wholly within the Clarke's land.

In 1956, the Fredettes built a house on Khourie Road near the eastern end of old Khourie Road. The Fredettes continued to use both branches of old Khourie Road to reach a driveway extending into the remainder of the twenty acre tract, although with the construction of the house to the east, the western branch gradually became less used.

In 1963, John Clarke, who knew of and did not object to the Fredettes' use of the western branch, married

the defendant. Alfred E. Fredette continued to clear, mow and maintain the western branch until his death in 1970.

In 1972, Alfred M. Fredette, the son of Alfred E. Fredette, began building a house in the rear of the tract which was reached by the driveway leading to old Khourie Road. He testified that construction equipment and materials were delivered using both branches of Old Khourie Road, again with the defendant's apparent knowledge and consent. Because his mother was ill, Alfred M. Fredette never resided in the new home, leaving it vacant until he sold it to the plaintiffs in 1986.

The western branch of old Khourie road became increasingly overgrown. Alfred M. Fredette testified that he attempted to use it in 1982 when the eastern branch was obstructed by repair work, and he found it nearly impassible. In 1986, the defendant's daughter, placed a fence across the western branch near the boundary of her mother's land and that of the Fredettes. At various times thereafter, she dumped manure and barn sweepings into the roadway.

On February 6, 1990, the plaintiffs filed a complaint seeking an injunction alleging that the defendant was obstructing a right-of-way that their predecessors in title had obtained from the town of Scotland in 1947. Judgment was rendered for the plaintiffs on February 25, 1991, following a two day trial. This appeal followed.

We note at the outset that the closing of old Khourie Road is not governed by General Statutes § 13a-55,[1]

[1] General Statutes § 13a-55 provides: "Property owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way for all purposes for which a public highway may be now or hereafter used over such discontinued or abandoned highway to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway.

which governs the rights of property owners bounding a discontinued or abandoned public way, because the town use of old Khourie Road was discontinued in 1947, twelve years before the enactment of that statute. *Rudewicz* v. *Gagne,* 22 Conn. App. 285, 287, 582 A.2d 463 (1990). We must then turn to the common law to determine whether the town of Scotland granted the plaintiffs' predecessors in title an easement to use the discontinued roadway.

It is uncontested that the parcel in question was part of a public highway before its discontinuance. The town had no fee interest in the highway itself. Where a highway runs along the boundary between the parties' land, they continue to be owners of the underlying soil to the middle of the way. *Luf* v. *Southbury,* 188 Conn. 336, 341, 449 A.2d 1001 (1982); *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 355–56, 114 A.2d 216 (1955). The existence of the public highway creates two easements: (1) the public easement of travel that permits the general traveling public to pass over the highway at will; and (2) the private easement of access that permits the landowners who abut the highway to have access to the highway and to the connecting system of public roads. *Luf* v. *Southbury,* supra; *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* supra.

At the time the town voted to close the road, our common law was that the discontinuance of a public highway extinguished both the public easement of travel and the private easement of access. The adjoining landowners' fee interest in the underlying soil to the middle of the discontinued road was no longer subject to either the public's right of travel or the other adjoining landowner's right of passage. If this total and permanent destruction of the right of access caused by the discontinuance of a public highway eliminated an abutting owner's only practical access to the public high-

way system, it was compensable. *Luf* v. *Southbury,* supra, 342–43; *Cone* v. *Waterford,* 158 Conn. 276, 279–80, 259 A.2d 615 (1969).

The town was apparently aware of both the common law rule and the possibility that it might have to compensate an adjoining landowner for a lost right of access. At the same meeting that closed the portion of Khourie Road, the town also voted to close two other portions of disused highway. In both of those cases, the town stated that both road beds would go back to the adjoining owners from the center of the old roadbed.[2] When the town voted to close the portion of roadbed adjoining the Clarke and Fredette properties, however, it made the same a road "to be used by the owner or owners of said property." This action abandoned the public's right of passage while continuing each abutter's right of passage, a result that spared the town the risk of having to compensate the Fredettes or Clarkes for any impairment of their access to the public highway system.[3] See *Luf* v. *Southbury,* supra.

[2] The warning of the meeting states that:

"6—To see if the Town will vote to close for Town use a portion of old road-bed no longer needed by the Town, joining land of Mr. Lowe, Pappenheimer, and Mrs. Bowers; opposite and west and south of the Parkhurst entrance; the same to go back to the adjoining owners from the center of the old road-bed;

"7—To see if the Town will vote to close a portion of old road-bed, no longer needed, in front of Miss Khourie's house and leading west back to the new road-bed; the same to go back to Miss Khourie, the present owner.

"8—To see if the Town will close for Town use, a section of old road-bed beginning just past the Dr. Clarke place and leading into the pasture and woodland formerly owned by William Monty; the same to become a road to be used by the owner or owners of said property."

All three items were approved.

[3] Since the valid granting of the access of easement to the adjoining landowners would insulate the town from having to compensate them for its loss, we find that there was consideration for the transfer and that article one, § 1, of our state constitution providing that "[n]o man or set of men are entitled to exclusive public emoluments or privileges from the community" was not violated.

The defendant argues that a deed or other writing is required in order for the town to convey an interest in real estate. We note that under General Statutes § 13a-49, governing the discontinuance of highways or private ways, and the prior common law, however, the selectmen of a town may discontinue a highway by a writing signed by them. The trial court reviewed the minutes of the town meeting and determined that the town had sufficiently complied with the then existing common law when it abandoned the highway. We agree that the town's vote was not a conveyance, but merely preserved the abutters' private easement of access. Therefore, no deed was required.

The defendant next contends that the trial court abused its discretion in determining that the deed from Alfred M. Fredette and Rose M. Fredette to the plaintiffs, dated December 4, 1986, conveyed the easement to the plaintiffs. The defendant correctly states that neither the courses and distances set forth in the deed nor the "Subdivision Plan Cedar Hill Prepared for Alfred M. Fredette" specifically referenced in the deed includes the disputed portion of old Khourie Road. The court found that the deed language referring to the undisputed portion of old Khourie Road[4] described a right of passage remaining after the closure of the road and was not intended to limit appurtenant easements to the right-of-way along the western branch of old Khourie Road. It also found that the habendum clause, which included the phrase "with appurtenances thereof" was sufficient to convey the Fredettes' right-of-way over the disputed portion of old Khourie Road.

Our Supreme Court considered a defendant's right to use a right-of-way across a plaintiff's land that was not specifically conveyed in the deed to him in *Alling*

---

[4] The deed language is as follows: "Together with all rights to the abandoned section of Khourie Road as shown on said plan . . . ."

*Realty Co.* v. *Olderman,* 90 Conn. 241, 96 A. 944 (1916). In that case, the original owner of a large parcel had divided it into at least four parcels that were separated by a seventeen foot alleyway. The defendant owned two adjacent parcels of land, each of which had access to the alleyway. He had purchased one tract that had been created before the right-of-way existed and therefore contained no reference to it in its deed. The second parcel had been granted an express right-of-way over the alley, but that language was omitted in the deed from an intervening landowner to the defendant. The court affirmed the trial court's findings that the defendant had an easement for both properties. With regard to the second parcel, it stated that the "deed to the defendant did not, in specific terms, convey the right of way, but it did expressly grant the land with its appurtenances, and, by the force of that language, the easement as appurtenant to the land conveyed passed to the defendant." Id., 251.

In other cases, our courts have held that the phrase "with all the appurtenances" is sufficient for the passage of an appurtenant easement although it is not otherwise described. *Blanchard* v. *Maxson,* 84 Conn. 429, 434, 80 A. 206 (1911); see also *Schroeder* v. *Taylor,* 104 Conn. 596, 601, 134 A. 63 (1926); *Vingiano* v. *Vitolo,* 5 Conn. Cir. 360, 365, 253 A.2d 681 (1968). The boundaries described by the plaintiffs' deed and the plan referenced therein do not limit the broad power of the habendum clause to convey easements which are not otherwise set forth.

The judgment is affirmed.

In this opinion the other judges concurred.