[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In the first case, Timber Harvesting, Inc. v. Ouellette, docket no. CV92 0050736, the plaintiff, Timber Harvesting, Inc. (hereinafter "Timber Harvesting"), claims a right of way over property in the Town of Stafford of the defendants, Emile B. and Claire F. Ouellette (hereinafter "the Ouellettes"). Timber Harvesting seeks damages and an injunction to prevent the defendant Ouellettes from obstructing or interfering with its use of the right of way it claims exists over an abandoned highway, sometimes referred to as "Old Bumstead Road" (and spelling variations of "Bumpstead" and "Bumsted"). The defendants Ouellettes deny this claim and seek damages by way of a counterclaim for trespass from plaintiff Timber Harvesting.
In the other action, Wood v. Timber Harvesting, docket no. CV92 0050369, plaintiffs Robert N. Wood, Jr. and Janice A. Wood (hereinafter "the Woods"), seek a court judgment that no right of way in favor of Timber Harvesting exists over their property. In addition, the Woods claim treble damages in accordance with General CT Page 1506 Statutes 52-560 for cutting trees on their property. On its counterclaim in the second action, Timber Harvesting seeks damages and an injunction to prevent the Woods from obstructing or interfering with their claimed right of way.
Timber Harvesting has produced deeds by which it claims the westerly boundary of the real estate of all three parties was a public highway. Timber Harvesting claims that these deeds established a public highway, which it admits was subsequently abandoned, but which it claims then became a right of way in favor of Timber Harvesting over the properties of the Ouellettes and Woods.
Exhibits A through E are the deeds which constitute the chain of title for the Timber Harvesting property. Exhibits F through N are the deeds in the chain of title to the Ouellettes' property, while Exhibits F through P are the deeds in the chain of title to the Woods' property.
The first issue to be addressed is whether the public highway which was claimed to have been abandoned was ever, in fact, a public highway. At common law, highways were established in Connecticut by dedication to the public use and acceptance by the public. Ventres v. Farmington, 192 Conn. 663, 666, 473 A.2d 1216
(1984). The issues of dedication and acceptance are both questions of fact for which the plaintiff (Timber Harvesting) carries the burden of proof. Goodrich v. Dwyer, 17 Conn. App. 111, 113,550 A.2d 318 (1988). "Both the owner's intention to dedicate the way to public use and acceptance by the public must exist" Wamphassuc Point Property Owners Assoc. v. Public Utilities Commission, 154 Conn. 674, 681, 228 A.2d 513 (1967). "The essential elements to be proved are the owner's unequivocal intention to dedicate the way to public use, and a general use the public over a period long enough to indicate that it was acting on the basis of a claimed public right resulting from the owner's dedication." Goodrich v. Dwyer, supra, citing Ventres v. Farmington, supra, 666-67.
Dedication of a way to public use does not require any particular formality, but requires an intent by the owner to dedicate the highway to public use. Whippoorwill Crest Co. v. Stratford, 145 Conn. 268, 271, 141 A.2d 241 (1958). "An implied dedication may arise by operation of law where the conduct of a property owner unequivocally manifests his intention to devote his property to a public use "A H Corporation v. Bridgeport, CT Page 1507180 Conn. 435, 439, 430 A.2d 25 (1980). However, no presumption of an intent to dedicate, and therefore no implied dedication, arises unless it is clearly shown by the owner's acts and declarations, the only reasonable explanation of which is that a dedication was intended." Id.
Timber Harvesting offered no direct evidence of an intent by any of the grantors in the Ouellette or Wood chains of title to dedicate a roadway to public use as a public highway. The deeds do not show a dedication, either actual or implied. They merely show, that the parcels are bounded by a road or highway (See Exhibits F through K). There is no granting or dedication of a public highway in any of these deeds. In fact, by describing the "highway" as a boundary, the deeds show that the property beneath the so-called "highway" was not even owned by any of the grantors in the Ouellette or Wood chains of title, and therefore could not have been dedicated by them; nor do any of the deeds in Timber Harvesting's chain of title (Exhibits A through E) evidence the dedication of a highway. Although Exhibit A (an 1803 deed that is first in Timber Harvesting's chain of title) mentions a "road that leads by Joseph Bumsted's . . .,", it is mentioned as a boundary to the property and not as part of the property itself.
Assuming, arguendo, that Timber Harvesting has shown the dedication to the public use necessary to establish that a highway bounded the Ouellette and Wood properties, the next issue to be addressed is whether there was a public acceptance of this road. Timber Harvesting claims that the acceptance was an implied rather than formal acceptance based upon the usage of the road by the public. An implied acceptance may be shown by proof of the public's actual use of the way; Wamphassuc Point Property Owners Assoc. v. Public Utilities Commission, supra, 681; or by municipal actions, such as grading and paving a road or installation of lights, sidewalks or sewers. Meshberg v. Bridgeport City Trust Co.,180 Conn. 274, 282-83, 429 A.2d 865 (1980). The actual use necessary to constitute an implied acceptance need not be constant or by a large portion of the local public. Id., 282. It is the nature and quality of the public's use of the property, rather than the number of people who use it, that govern whether a road is impliedly accepted. Id. "The use to which the public puts the subject property must continue over a significant period of time. . . and be of such a character as to justify a conclusion that the way is `of common convenience and necessity.'" Id., 282.
Timber Harvesting has presented no evidence that the usage CT Page 1508 of the claimed highway was of such a quality (or quantity) that the public acceptance was implied. The court fully recognizes that no one is alive from the nineteenth century to testify as to the public usage of the claimed highway, but the burden is still on Timber Harvesting to prove by a preponderance of the evidence that such usage occurred. There was, of course, no such testimony. Further, Timber Harvesting has nor produced any records of public usage to demonstrate that the way was "of common convenience or necessity" to the public. The references in an 1803 deed (Exhibit A) and an 1875 probate distribution (Exhibit F) to a "road that leads by Joseph Bumsted's" and the "Old Bumpstead Road," respectively, are insufficient to show public usage and acceptance, especially since no other references to the name of the alleged highway have been found past 1875; nor has Timber Harvesting presented any evidence that the Town of Stafford acted in any manner (e.g., grading or paving) with respect to the claimed right of way that would indicate its acceptance of the property as a public highway. To the contrary, however, Mr. Ouellette testified that since he has owned the property (1966) there has been no public use of the right of way claimed by Timber Harvesting. Moreover, Mrs. Wood testified that since she and her husband purchased their property in 1984, no one except Timber Harvesting had attempted to use their property or the area bounding it as a public road or right of way.
Additionally, Timber Harvesting has not shown the location of the "road" with reasonable certainty. Mr. Symonds, Timber Harvesting's expert surveyor, claims that the physical road is not a boundary, bus is in most places at least four feet east of the westerly boundary of the subject property (i.e., on the Ouellettes' property). This testimony, however, flies in the face of the claim that the road is the westerly boundary. Furthermore, Mr. Symonds could not say with reasonable certainty that the road in question was Old Bumstead Road, and because of that uncertainty, he would not designate it as such on his map (Exhibit S). Also, Mr. Symonds could not locate the "farm", "orchard", "willows" or "woods" used as boundary markers to identify the Ouellette property in the 1875 probate certificate (Exhibit F).
Attorney Uguccioni, Timber Harvesting's expert title searcher and archivist, was also unable to show the road with sufficient certainty. He stated that he did not walk the property, but instead relied on the deeds and land records to determine that Old Bumstead Road was the westerly boundary of the Ouellette, Wood and Timber Harvesting properties. Attorney Uguccioni testified CT Page 1509 that he did not know exactly where the Joseph Bumsted property, referred to in Exhibit A, was located, but might be able to determine its location with certainty if he had another week to review the land records. That was on August 19, 1993. On September 30, 1993, the date of resumption of trial, Attorney Uguccioni did not appear to testify, nor did he appear the next day which was the last trial date. It is reasonable to conclude that he either did not check the land records or, if he did check them, he still could not locate the property with certainty. See Secondino v. New Haven Gas Co., 147 Conn. 672, 165 A.2d 598 (1960).
In addition, at first, Attorney Uguccioni said he had not issued a certificate of title to Timber Harvesting prior to its purchase of its subject property. Then, Attorney Uguccioni indicated that he had issued a certificate of title as to the Timber Harvesting parcel and said he would try to locate and maker available a copy of the document. He failed to do so, and the court is disturbed that no evidence of a certificate of title has been furnished by either Attorney Uguccioni or Timber Harvesting. The certificate was supposedly issued at the time of Timber Harvesting's purchase on September 26, 1991, not that long ago, and the court finds this to be an important document. The failure of Attorney Uguccioni and Timber Harvesting to furnish such a certificate of title undermines Attorney Uguccioni's credibility.
Based upon the conflicting testimony of Timber Harvesting's two expert witnesses as well as the insufficiency of their testimony, the court finds that the deeds and maps in evidence and the testimony of Timber Harvesting's witnesses are insufficient to establish that, as claimed, there was a public road or highway, that it was dedicated or accepted, or that it could be located with reasonable certainty.
However, even assuming that the existence of such a road or highway had been proven, it is clear from Timber Harvesting's own admissions that it was abandoned late in the nineteenth century, (Defendant's Exhibit 10, Interrogatory 4). Connecticut General Statutes 13a-55, originally enacted in 1959, provides: "Property owners bounding a discontinued or abandoned highway shall have a right-of-way for all purposes for which a public highway may be now or hereafter used over such discontinued or abandoned highway to the nearest or most accessible highway . . ." In interpreting this statute, Rudewicz v. Gagne, 22 Conn. App. 285,287, 582 A.2d 463 (1990) and Chaput v. Clarke, 26 Conn. App. 785,789, 603 A.2d 1195 (1992), both hold that such rights of boundary CT Page 1510 property owners are prospective from the enactment of the statute in 1959 and not retroactive.
Since both Rudewicz and Chaput involved a formal discontinuance (i.e., not an abandonment) by a town, Timber Harvesting claims that this is a case of first impression in Connecticut as to "abandonment." Timber Harvesting cites cases from other jurisdictions to the effect that the aforementioned rights after an abandonment are not prospective, but are, instead, retroactive. The court disagrees. While on this issue, this may well be a case of first impression in Connecticut, the statute (General Statutes 13a-55) should be interpreted as to its plain' language.
"Our Supreme Court has consistently expressed reluctance `construe statutes retroactively where the statutes affect substantial changes in the law, unless the legislative intent clearly and unequivocally appears otherwise.' State v. Lizotte, 200 Conn. 734,741, 517 A.2d 610 (1986); Rudewicz v. Gagne, 22 Conn. App. 285,288, 582 A.2d 463 (1990)." DeAlmeida v. M.C.M. Stamping Corporation, 29 Conn. App. 441, 450, 615 A.2d 1066 (1992). In contrast, procedural statutes are usually given retroactive effect unless there is legislative intent to the contrary. id. If the statutory language is clear, ordinarily there is no need for statutory construction. Connecticut Bank Trust Co. v. Winters,225 Conn. 146, 157, 622 A.2d 536 (1993).
On its face, General Statutes 13a-55 refers to abandonment just as it does to discontinuance. The fact that Rudewicz v. Gagne, supra, and Chaput v. Clarke, supra, each involved a discontinuance and not an abandonment does not preclude the court from finding, as it now finds, that the plain language of said statute puts abandonment in the same category as discontinuance. The rights created by General Statutes 13a-55 are substantive rights whether they result from discontinuance or abandonment. See Rudewicz v. Gagne, supra, 289.[1] The court finds that in the case of abandonment, the rights of property owners given by the 1959 enactment of General Statutes 13a-55 are prospective only. Thus, the common law as it existed prior to 1959 would apply. Under the common law, the alleged public highway was abandoned between 1875 and 1900, thereby extinguishing any rights thereto. See Luf v. Southbury, 188 Conn. 336, 344, 449 A.2d 1001 (1982). The admitted abandonment of the claimed highway between 1875 and 1900 extinguished any rights of bounding property owners to the claimed road/highway and/or right of way and/or easement. CT Page 1511
Accordingly, in the first case, Timber Harvesting, Inc. v. Ouellette, docket no. CV92 0050736, the court finds from the totality of the evidence[2] that Timber Harvesting has not sustained its burden of proof that a right of way exists over the Ouellettes' property in favor of its own property. The application for an injunction is denied and judgment may enter for the defendants, the Ouellettes, on the Timber Harvesting complaint. As to the counterclaim by the Ouellettes, the court finds that a trespass did occur and finds in favor of the Ouellettes and enters judgment accordingly. Suffice it to say, however, that the court is not impressed with the claim of damages suffered by the Ouellettes and enters judgment for the Ouellettes in the amount of $1.00.
In the second case, Wood v. Timber Harvesting, docket no. CV 92 0050369, based upon the totality of the evidence, the court finds that no right of way, easement or any other rights exist over the Woods property in favor of Timber Harvesting or the Ouellettes or any owners of the properties to the north of the Woods property, and renders judgment for the plaintiffs, the Woods, in said action to quiet title. Said plaintiffs, Woods, did not offer any evidence of damages and, accordingly, none are awarded. On the counterclaim by Timber Harvesting, for the reasons stated above in both cases, the court renders judgment for the plaintiffs, Woods, on said counterclaim.
Rittenband, J.