[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
Meriden's Corporation Counsel filed the complaint on December 21, 1990 at New Haven No. CV91-312018S. This pleading was entitled "Application For An Appointment of a Committee of Appraisers" authorized by Connecticut General Statutes § 25-42 and § C3-1 of Meriden's Ordinances.
On November 4, 1992, an "Answer and Counterclaim" was filed admitting paragraph 2 and 3 of the applications, i.d., the statutory authority as alleged and that defendants are the owners of the land in question. The counterclaim sounds in three counts alleging (1) inverse conversion in violation of U.S. Constitution, (2) violation of Connecticut State Constitution, and (3) violation of the charter, ordinances, and/or other laws of the City of Meriden.
Defendants acquired the property in 1984. Defendants claim money damages with an assessment of highest and best use of the land, interest accrued, costs, attorney's fees, appraisal fees, and other expenses related to these proceedings.
At some time it was referred to an ADR program. Nothing transpired.
On February 5, 1999, Attorney Shea appeared. Judge Trial Referee Dorsey started trial. On February 17, 2000, on motion of the defendants filed January 21, 2000 the undersigned was assigned to hear and decide this case de novo. On March 23, 2001 defendant's attorney filed (Item 118) "Suggestion of Death". Defendant Robert died on February 26, 2001.
This court started trial at 10:30 a.m. on April 10, 2000. (We are now from 12/21/90 to 4/10/00). The City filed its motion in limine to preclude defendants from presenting expert witnesses under P.B. 220 then law or in the alternative to allow plaintiff a reasonable continuance to conduct discovery. The City at that time only had an "88 report. I don't have anything else." Questions under P.B. 220 involved timber, trap rock, building a multiple home subdivision, wood lot and acreage involved.
The City of Meriden claimed undue prejudice as a result of defendant's failure to comply with P.B. 220. The defendants respond that they have the right to present evidence of the value of the property at the time of CT Page 4515 the taking in May in 1986 when the City of Meriden by its own actions, precluded defendants from access to the property, which they consider to be under the law, an invasion and therefore a taking by inverse condemnation.
The court denied the motion in limine and allowed the case to proceed on the merits on the complaint and counterclaim; question of inverse condemnation; valuation of the property from a real estate point of view and to present evidence of value of a wood lot, growing wood, the acreage, timber, trap rock and provide the City with a reasonable period of time to examine and depose-any expert and ample opportunity to obtain their own experts. This was only fair because of the long unexplained delay in proceeding to the assignment for a trial on the merits.
The defendants' brief was submitted in December 2000. The attorney for the City was authorized to deliver her brief later as she had a long planned family extended vacation in South America scheduled.
The court received her brief on March 15, 2001. On November 9, 2000, a hearing on a motion to dismiss the counterclaim filed by the City was heard. The counterclaim presents the claim of inverse condemnation. The testimony was presented on April 10, 2000 and June 21, 2000 and the court and attorneys visited and viewed the entire property. A briefing schedule was agreed upon. The schedule was not met. Plaintiff filed a motion requesting that the counterclaim of inverse condemnation be dismissed for failure to prosecute with due diligence with the agreed upon briefing schedule. No brief was filed on schedule due to claimed unfortunate incapacitation with a disease of the attorney assigned to prepare the briefs for defendants.
The court denied the motion to dismiss the counterclaim based on the claimed diseased attorney's incapacitation. The court awarded plaintiff costs of Two Hundred Fifty Dollars for the cost of the motion to dismiss which necessitated the hearing and travel to New Haven.
This action is based on § 25-42 C.G.S. an enabling act that the City of Meriden seeks to enforce. The City must supply its inhabitants with pure water for public and domestic use and may take and use such land or such rights or interest therein as the Superior Court on application, deems necessary for the purpose of such supply. For the purpose of preserving the purity of such water and preventing contamination thereof Meriden may take such lands or rights as the Superior Court deems necessary therefor. CT Page 4516
The pleadings, evidence, testimony, trial and/or post trial briefs presented no assault or attack on this statute, i.e., Meriden's "Power to take land and streams" as alleged.
Defendant's counterclaim asserts that the barricading by the City on or about May 30, 1986 of West Park Road and Reservoir Avenue, both improved rights of way which have been regularly and continuously used as public thoroughfares dedicated to and accepted for public travel deprived the defendants from access to their properties and such blockage and deprivation of access constituted a taking of their properties by inverse condemnation in violation of the prayers for relief as recited and claimed in the counterclaim.
Defendant's brief recites that the parties by oral stipulation agreed that the referral to this court was for the purpose of determining the values of the properties and defendants' claim of inverse condemnation.
Defendants claimed four issues before that court.
 I. 1. Did the action of the City of Meriden in erecting a fence at the juxtaposition of Reservoir Avenue and Interstate 691 in Hubbard Park Meriden and the installation of concrete Jersey blocks at the intersection of Reservoir Avenue and Park Drive, Berlin, with the approval of the Town of Berlin, deprive the defendants access to their properties and thus constitute a taking of property rights in their land?
The facts in this case support a finding that some impairment of access rights and some diminution in the total value of this subject property resulted, and do not, with more, justify a conclusion for a finding of inverse condemnation.
 While "` [a]ll property is held subject to the right of government to regulate its use in the exercise of police power'", "if regulation goes too far, it will be recognized as a taking". . . . In analyzing regulatory action to determine whether it "goes too far," we are mindful that the difference between a regulation that results in a compensable taking and one that does not generally is a matter of degree. Luf v. Southbury, 188 Conn. 336, 349, 449 A.2d 1001
(1982). Although at one extreme a regulation may CT Page 4517 deprive an owner of the beneficial use of property so as to constitute a practical confiscation, thereby requiring compensation; . . . a regulation results in something less than a practical confiscation, "the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner. . . . The financial effect on a particular owner must be balanced against the health, safety and welfare of the community." . . . (determination of whether regulatory action constitutes taking necessarily requires weighing of private and public interests).
 Thus, when reviewing a takings claim based upon an alleged infringement of an owner's legal right of access to property, a court must ascertain the degree to which such access is impaired by the regulatory action; including the extent to which the regulation deprives the owner of a reasonably convenient and suitable means of access. . . . Although we consistently have held that "[a] landowner who as a result of governmental action, suffers a total and permanent loss of his right of access to the public way . . . is entitled to recover" (destruction of sole right of access to landlocked property constitutes taking); "some impairment of access rights and some diminution in the total value of property do not, without more, justify a constitution that there has been an unconstitutional taking. . . ."
Cohen v. Hartford, 244 Conn. 206, 220, 229 (1998).
 II. 2. What constitutes the actual property of defendants DeMaria?
The actual property consists of 0.90 acre of land on the north side of West Peak Drive, Berlin and 10 acres more or less on the south side of West Peak Drive, Berlin and approximately 1.47 acres located on Park Drive, Meriden. Total 12.37 acres. CT Page 4518
 III. 3. What are the highest and best uses of the DeMaria land?
To become part of the Meriden's watershed property.
 IV. 4. What are the elements for the court to determine in valuing the land? i.e., the acreage of the land, the value of the timber standing on the land, and the value of the trap rock in place on the land and the resultant residential use of the land under the Town of Berlin zoning regulations?
The acreage of the land has been stated hereinbefore.
The defendants have not established that they have been deprived of reasonable and proper use of their properties. Some impairment of access and some claimed diminution in value do not, without more, justify a conclusion that there has been an unconstitutional taking.
The barricade and locking gate installed by the City did not impose substantial and material impairments to defendants claimed speculative loss of their property.
No facts in evidence support a conclusion of a total and permanent inverse condemnation or taking.
The defendants purchased the property for $6400.00 fully aware that it was in a watershed area.
Plaintiff's questions before the court are:
(1) Did the actions of the City of Meriden result in an inverse condemnation of the DeMaria's property?
No. Cohen v. Hartford, supra 207 Conn. 206 (1998)
 "The financial effect of a particular owner must be balanced against the health, safety and welfare of the community." P. 221.
 Tighe v. Town of Berlin, CV97-0575028S, Judicial District at Hartford recites that C.G.S. § 7-148 (6)(C), 7-148 (7)(B) and 7-148 (7) CT Page 4519 authorizes municipalities to regulate and prohibit traffic, to abate all things detrimental to the health, morals, safety, community and welfare of its inhabitants, provide for the public and safety, etc. The facts ofTighe concern a locked gate erected by Berlin under the police power to control and abate annoying conduct creating "at risk" status to local residences and that the Planning and Zoning Commission of Berlin requested a developer of a subdivision to prevent traffic by a group of men with dirt bikes who were noisy and intoxicated, with vehicles running wildly. A fence was installed. This fence was subsequently knocked down and damaged.
A stronger fence or gate was erected by the town. The gate had a lock and keys to the lock were made available to all of the abutter residents.
The balancing test based on the facts of this case look at the public's need for an adequate supply of pure water and preserving the purity of such water and preventing contamination thereof, must also look at the financial effects of a particular owner, i.e., named defendants.
The court finds that the facts of the installation of the barricade, fence and gate locked with a key available to adjoining abutters a small inconvenience compared to the interest of the public, safety and welfare and the necessity of adequate water.
2. Question 1 was no.
3. If the above answer is no, then the court can proceed to consider the current fair market value of the property.
The property is raw, undeveloped, untouched, mountainous land, undeveloped and hilly. There is no water or sewer service. The court visited and observed the land.
Since 1986 concrete barricades have been installed at the end of Park Drive and a gate with a padlock installed at the entrance of Reservoir Road. This impairment of free travel and claimed diminution in claimed total value, do not, without more justify a conclusion that there has been an unconstitutional taking. This was not a substantial interference with private property rights that destroys or nullifies its value or by which the owner's rights to its use or enjoyment is in a substantial degree abridged or destroyed. Weighing of private and public interest are warranted. CT Page 4520
Claims that defendants planned to forest the property, quarry it and develop it were remote and speculative.
Judgment on the counterclaim for plaintiff.
Defendants' appraiser's opinion valued the property in 1986 as $137,000.00. A year 2000 opinion was $361,000.00. His 1988 value of the property warrant buildable but had vehicular access to be $52,000.00. The Meriden appraiser's opinion had a value of $33,000.00 at the same time period.
The fair market value of the property in 1986 was $52,000 non-buildable with vehicular access.
Paragraph 1 of the prayer for relief was waived as the parties stipulated the court could find damages based on fair market value.
Paragraph 2 of the prayer for relief seeks a judgment in condemnation whereof ownership of the subject land rests in the City of Meriden pursuant to C.G.S. § 25-42.
(1) Judgment for $52,000.00 as damages on Count One in lieu of appointment of committee to determine and award the amount to be paid by the City of Meriden before title to the land rests in the City as stipulated.
(2) Judgment as requested on this prayer.
Defendant to compute and submit claim of interest.
Reynolds, Judge Trial Referee